DUNCAN v STATE OF MICHIGAN

Docket No. 307790. Submitted December 12, 2012, at Lansing. Decided
     April 2, 2013, at 9:05 a.m. Application for leave to appeal dismissed
     on stipulation, 494 Mich ___.

     Christopher L. Duncan and seven other individuals brought an
     action in the Ingham Circuit Court against the state of Michigan
     and the Governor, challenging the indigent defense system em-
     ployed in Berrien, Genesee, and Muskegon Counties and seeking
     injunctive relief, through a class action, to improve the quality of
     indigent representation. The proposed class consisted of present
     and future indigent criminal defendants who require appointed
     counsel. Defendants moved for summary disposition under MCR
     2.116(C)(4), (7), and (8), arguing, among other things, that plain-
     tiffs' preconviction claims were nonjusticiable because plaintiffs
     had failed to meet the certification requirements for a class action,
     had failed to properly plead a valid cause of action against
     defendants, and lacked standing. The court, Laura Baird, J.,
     granted the motion for class certification and denied summary
     disposition for defendants, and defendants appealed. The Court of
     Appeals, MURPHY, P.J., and SAWYER, J. (WHITBECK, J., dissenting),
     held that plaintiffs, on the basis of the pleadings and at that
     juncture in the lawsuit, had sufficiently set forth facts that (1)
     established standing, (2) established that the case was ripe for
     adjudication, and (3) stated claims on which declaratory and
     injunctive relief could be granted and that the trial court had
     properly granted the motion for class certification. The dissent
     would have held that defendants were entitled to summary dispo-
     sition because granting plaintiffs relief would violate the separa-
     tion of powers and plaintiffs had failed to state a proper claim for
     relief, lacked standing, and had pleaded unripe claims and would
     have further held that the trial court had improperly certified a
     class action. 284 Mich App 246 (2009). Defendants sought leave to
     appeal. In an order entered April 30, 2010, the Supreme Court
     vacated the trial court's order certifying the class and remanded
     the case to the trial court for reconsideration of the motion for
     class certification in light of Henry v Dow Chem Co, 484 Mich 483
     (2009). With respect to defendants' appeal of the denial of sum-
     mary disposition, the Supreme Court affirmed the result only of
     the Court of Appeals majority for different reasons, noting that the

case was in its earliest stages and that from plaintiffs' pleadings only it was premature to make a decision on substantive issues. Thus, defendants were not entitled to summary disposition at that time. 486 Mich 906 (2010). On July 16, 2010, the Supreme Court granted reconsideration, vacated its April 30 order, and reversed the Court of Appeals' judgment for the reasons stated in the Court of Appeals dissent, specifically noting that plaintiffs' claims were not justiciable. 486 Mich 1071 (2010). The Supreme Court subsequently granted reconsideration again on November 30, 2010, vacated its July 16 order and reinstated its April 30 order on the ground that reconsideration had been improperly granted. 488 Mich 957 (2010). On December 29, 2010, the Supreme Court denied reconsideration of its November 30 order. 488 Mich 1011 (2010). Accordingly, pursuant to the Supreme Court's April 30 order, the matter returned to the trial court, which decided to permit discovery before ruling on the motion for class certification. Defendants again moved for summary disposition, arguing that (1) discovery was inappropriate because the Supreme Court had remanded for consideration of the pending motion, not a renewed motion with the benefit of discovery, (2) plaintiffs' class action should not be certified, (3) plaintiffs lacked standing, (4) plaintiffs had failed to state a claim on which relief could be granted, (5) res judicata barred plaintiffs' claims, and (6) plaintiffs were judicially estopped from objecting to defendants' challenges. The trial court denied the motion, concluding that *Henry* required discovery before deciding a class certification motion, that the court could not reconsider defendants' motion under MCR 2.116(C)(8) because the Supreme Court and Court of Appeals had already decided those matters in plaintiffs' favor, and that defendants had failed to establish any element of res judicata. Defendants appealed.

The Court of Appeals *held*:

1. Defendants argued that the trial court inappropriately ordered discovery and that plaintiffs had not met their burden of establishing that each prerequisite for class certification was satisfied. For a court to grant a motion for class certification, the requirements of MCR 3.501(A)(1) and (2) must be satisfied. The court cannot rubber-stamp allegations in a pleading that baldly proclaim that the class-certification requirements have been satisfied, but the court also cannot evaluate the merits of the plaintiff's claims. A court may base its decision on the pleadings alone only if the pleadings set forth sufficient information to satisfy the court that each prerequisite is in fact met. If the pleadings are not sufficient, the court must look to additional

information beyond the pleadings to determine whether class certification is proper. Under MCR 3.501(B)(3)(b), the court may allow the action to be maintained as a class action, may deny the motion, or may order that a ruling be postponed pending discovery or other preliminary procedures. The trial court did not certify plaintiffs' action as a class action, however, but merely denied the summary disposition motion until discovery could be completed, as permitted under the court rule. Nor did the trial court's denial of defendants' motion on the basis that the motion was premature contravene the Supreme Court's order. The trial court obeyed the Supreme Court's order to consider the class-certification question in light of *Henry*.

2. The trial court did not err by denying the state's motion for summary disposition under MCR 2.116(C)(8). The Court of Appeals had previously held that plaintiffs properly stated claims on which declaratory and injunctive relief could be awarded, thus defeating defendants' motion under MCR 2.116(C)(8). The Supreme Court later affirmed, albeit in result only, opining that it was premature to make a decision on the substantive issues solely on the basis of plaintiffs' pleadings. Thus, the only proper question for the Court of Appeals to address was whether defendants' argument was foreclosed under the doctrine of the law of the case. Generally, the doctrine provides that an appellate court's decision will bind a trial court on remand and the appellate court in subsequent appeals. If a case is taken on appeal to a higher appellate court, the law of the case announced in the higher appellate court supersedes that set forth in the intermediate appellate court, but rulings of the intermediate appellate court remain the law of the case insofar as they are not affected by the opinion of the higher court reviewing the lower court's determination. The doctrine is usually considered discretionary—a general practice by the courts to avoid inconsistent judgments as opposed to a limit on the power of the courts—but the Court of Appeals must apply the doctrine when there has been no material change in the facts or intervening change in the law. Even if the prior decision was erroneous, that alone is insufficient to avoid application of the doctrine. The law of the case doctrine applied in this case. The Court of Appeals previously held that plaintiffs had pleaded causes of action for which declaratory and injunctive relief could be granted, and the Supreme Court affirmed. Defendants did not establish a material change of fact or an intervening change in the law that would have allowed avoidance of application of the doctrine and reconsideration of defendants' motion for summary disposition.

3. Judicial estoppel did not bar plaintiffs from relying on the law of the case doctrine to preclude reconsideration of defendants' motion under MCR 2.116(C)(8) because defendants failed to establish the requirements of judicial estoppel. Judicial estoppel prevents a party from asserting one position when that party successfully and unequivocally asserted a position in a prior proceeding that was wholly inconsistent with the position later taken. However, the mere assertion of inconsistent positions is not sufficient to invoke estoppel. There must be some indication that the court in the earlier proceeding accepted that party's position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent. Defendants contended that plaintiffs should be judicially estopped from relying on the law of the case doctrine because they had argued before the Supreme Court that there was no motion under MCR 2.116(C)(8) before it. Even if that was a wholly inconsistent statement, however, the Supreme Court affirmed the Court of Appeals' decision regarding defendants' motion for summary disposition, albeit in result only.

4. Defendants argued that the intervening change in the law of standing in Michigan following the Supreme Court's decision in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349 (2010) (*LSEA*), allowed them to reargue the question of plaintiffs' standing and that the trial court erred by failing to decide that plaintiffs lack standing under *LSEA*. When this case was initially decided, Michigan used the federal tripartite standing test that required a plaintiff to demonstrate (1) an injury in fact that was concrete, particularized, and either actual or imminent, (2) that the injury was fairly traceable (causally linked to) the defendant's conduct, and (3) that the remedy sought would likely redress the plaintiff's injuries. *LSEA* reinstituted Michigan's prior standing test, which automatically confers standing on any party who has a legal cause of action, regardless of whether the underlying issue is justiciable. If a specific cause of action at law does not exist for the plaintiff, then the plaintiff may have standing if the plaintiff has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the plaintiff. Although the law of the case doctrine does not necessarily apply when there has been an intervening change in the law, the Supreme Court clearly reinstated its original decision affirming the Court of Appeals' judgment in this case after it decided *LSEA*. The law of case doctrine therefore applied because the Supreme Court implicitly decided under *LSEA* the issue of plaintiffs' standing. The Court of Appeals was bound

by stare decisis to follow *LSEA* and could not discard it as unworkable and apply the prior test.

5. Defendants argued that the doctrine of res judicata barred plaintiffs' claims because plaintiffs were attempting to litigate the effectiveness of their indigent criminal defense counsel in this subsequent civil action when they could or should have raised the issue of ineffective assistance of counsel during their criminal proceedings. The doctrine of res judicata precludes relitigation of a claim when it is predicated on the same underlying transaction that was litigated in a prior case. Res judicata applies if (1) the prior action was decided on the merits, (2) the prior decision resulted in a final judgment, (3) both actions involved the same parties or those in privity with the parties, and (4) the issues presented in the subsequent case were or could have been decided in the prior case. For purposes of res judicata, parties are in privity with each other when they are so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. Res judicata applies to multiple claims arising out of a single transaction. The issues presented in this civil case regarding defendants' alleged deprivation of plaintiffs' constitutional rights through a deficient indigent criminal defense system were not and could not have been raised in the plaintiffs' individual criminal prosecutions. The remedy that plaintiffs sought through a class action, i.e., improvements to the indigent criminal defense system, could not have been achieved during their prior criminal proceedings. Without an action such as this, and assuming that plaintiffs' allegations are true, indigent persons accused of crimes in Michigan would continue to be subject to inadequate legal representation without remedy unless the representation adversely affected the outcome. Our system of justice requires effective representation, not ineffective but non-outcome-determinative representation. Further, as plaintiffs' proposed class includes indigent people who might not have been convicted of crimes, there has been no final decision on the merits in those cases. Res judicata did not bar plaintiffs' claims.

Affirmed.

WHITBECK, P.J., concurring in part and dissenting in part, concurred in the majority's holding on class certification, judicial estoppel (with respect to result), and standing (with respect to result under *LSEA* and fully with respect to overruling *LSEA*). He concluded, however, following a detailed review of the Supreme Court's confusing and contradictory orders in the case, that it was impossible to extract a law of the case from them. He further

believed that it would be impossible for plaintiffs to prevail on the claims they set forth, even under the most liberal interpretation of those claims and presuming every single fact alleged to be true, because none of the claims was judicially cognizable. Judge WHITBECK would therefore have reversed and remanded the case to the trial court for entry of summary disposition in favor of defendants.

1. ACTIONS — CLASS ACTIONS — GRANTING MOTIONS ON THE BASIS OF PLEADINGS — DISCOVERY.

For a trial court to grant a motion for class certification, the requirements of MCR 3.501(A)(1) and (2) must be satisfied; the court cannot rubber-stamp allegations in a pleading that baldly proclaim that the class-certification requirements have been satisfied, but the court also cannot evaluate the merits of the plaintiff's claims; the court may base its decision on the pleadings alone only if the pleadings set forth sufficient information to satisfy the court that each prerequisite is in fact met; if the pleadings are not sufficient, the court must look to additional information beyond the pleadings to determine whether class certification is proper; under MCR 3.501(B)(3)(b), the court may allow the action to be maintained as a class action, may deny the motion, or may order that a ruling be postponed pending discovery or other preliminary procedures.

2. APPEAL — DOCTRINE OF THE LAW OF THE CASE — APPLICATION.

Generally, the doctrine of the law of the case provides that an appellate court's decision will bind a trial court on remand and the appellate court in subsequent appeals; if a case is appealed in a higher appellate court, the law of the case announced in the higher appellate court supersedes that set forth in the intermediate appellate court, but rulings of the intermediate appellate court remain the law of the case insofar as they are not affected by the opinion of the higher court reviewing the lower court's determination; the doctrine is usually considered discretionary rather than a limit on the power of the courts, but the Court of Appeals must apply the doctrine when there has been no material change in the facts or intervening change in the law; even if the prior decision was erroneous, that alone is insufficient to avoid application of the doctrine.

3. ESTOPPEL — JUDICIAL ESTOPPEL — APPLICATION.

Judicial estoppel prevents a party from asserting one position when that party successfully and unequivocally asserted a position in a prior proceeding that was wholly inconsistent with the position now taken; the mere assertion of inconsistent positions, however,

is not sufficient to invoke estoppel; there must be some indication that the court in the earlier proceeding accepted that party's position as true; further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent.

*Frank D. Eamon PLLC* (by *Frank D. Eamon*), *Mark Granzotto, PC* (by *Mark R. Granzotto*), *Michael J. Steinberg, Kary L. Moss,* and *Mark P. Fancher* for plaintiffs.

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *Richard A Bandstra,* Chief Legal Counsel, and *Ann M. Sherman* and *Margaret A. Nelson,* Assistant Attorneys General, for defendants.

Before: WHITBECK, P.J., and FITZGERALD and BECKERING, JJ.

BECKERING, J. Defendants, the state and the Governor of Michigan (collectively "the state"), appeal by leave granted the trial court's order dated December 15, 2011, denying the state's motion for summary disposition. For the reasons set forth in this opinion, we affirm and lift the stay previously imposed by this Court.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case returns to this Court after a remand by our Supreme Court to the trial court. Plaintiffs filed suit challenging the sufficiency of the state's indigent criminal defense system and sought, through a class action, injunctive relief to improve the quality of indigent representation throughout Michigan. Plaintiffs' proposed class consists of present and future indigent criminal defendants who require counsel appointed through our indigent criminal defense system. The state previously moved for summary disposition under MCR 2.116(C)(4), (7), and (8), arguing, among other

things, that plaintiffs' preconviction claims were non-justiciable because plaintiffs (a) had failed to meet the certification requirements of a class action, (b) had failed to properly plead a valid cause of action against the state, and (c) lacked standing. The trial court disagreed and certified plaintiffs' class.

On appeal, a majority of this Court held that

> on the basis of the pleadings and at this juncture in the lawsuit, plaintiffs have sufficiently alleged facts that, if true, establish standing, establish that the case is ripe for adjudication, and state claims upon which declaratory and injunctive relief can be awarded. Finally, we hold that the trial court properly granted the motion for class certification. [*Duncan v Michigan*, 284 Mich App 246, 343; 774 NW2d 89 (2009).]

In a dissenting opinion, Judge WHITBECK opined that the state was entitled to summary disposition for the following reasons: (1) granting relief to plaintiffs would violate the separation of powers, (2) plaintiffs had failed to state a proper claim for relief, lacked standing, and had pleaded unripe claims, and (3) plaintiffs' action was incorrectly certified as a class action. *Id.* at 346, 371, 376, 385-388, 395-399 (WHITBECK, J., dissenting).

The state sought leave to appeal in our Supreme Court. In *Duncan v Michigan*, 486 Mich 906 (2010), our Supreme Court ordered as follows:

> Leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we hereby vacate the trial court's order granting the plaintiffs' motion for class certification and remand this case to the Ingham Circuit Court for reconsideration of the plaintiffs' motion for class certification in light of this Court's opinion in *Henry v Dow Chemical Co*, 484 Mich 483 [772 NW2d 301] (2009).
>
> As to the defendants' appeal of the decision on their motion for summary disposition, we hereby affirm the result

only of the Court of Appeals majority for different reasons. This case is at its earliest stages and, based solely on the plaintiffs' pleadings in this case, it is premature to make a decision on the substantive issues. Accordingly, the defendants are not entitled to summary disposition at this time.

We do not retain jurisdiction.

The Supreme Court subsequently granted reconsideration and reversed this Court's decision for the reasons stated in Judge WHITBECK's dissenting opinion. *Duncan v Michigan*, 486 Mich 1071 (2010). However, our Supreme Court later reinstated its original order affirming this Court's decision and remanding the matter to the trial court. *Duncan v Michigan*, 488 Mich 957 (2010).

On remand, the trial court held a status conference and decided to permit the parties to conduct discovery before deciding plaintiffs' motion for class certification. Before a single deposition was taken, however, the state renewed its motion for summary disposition, arguing the following: (1) discovery was inappropriate because the Supreme Court had remanded for consideration of plaintiffs' pending class-certification motion and not a renewed motion with the benefit of discovery, (2) plaintiffs' claims should not be certified as a class action, (3) plaintiffs lacked standing, (4) plaintiffs had failed to state a proper claim for which relief could be granted, (5) res judicata barred plaintiffs' claims, and (6) plaintiffs could not object to the state's challenges because of judicial estoppel. The trial court denied the state's motion, holding that (a) it was premature to decide plaintiffs' class-certification motion because *Henry* required the court to take discovery before deciding a certification motion, (b) it could not reconsider the state's MCR 2.116(C)(8) motion or plaintiffs' standing because both this Court and our Supreme Court had already decided those matters in plaintiffs' favor, and (c) the state had failed to establish any of the elements of res judicata.

II. ANALYSIS

A. CLASS CERTIFICATION

The state first argues that the trial court erroneously failed to dismiss plaintiffs' motion for class certification when it denied the state's motion for summary disposition. The state suggests that the trial court inappropriately ordered discovery and insists that plaintiffs "have not met their burden of establishing that each certification prerequisite has been satisfied." We reject this argument.

We review de novo a trial court's decision on a motion for summary disposition. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). "[T]he analysis a trial court must undertake in order to determine whether to certify a proposed class may involve making both findings of fact *and* discretionary determinations"; therefore, we review a trial court's factual findings regarding class certification for clear error and the decisions within the trial court's discretion for an abuse of discretion. *Henry*, 484 Mich at 495-496. State courts "have broad discretion to determine whether a class will be certified." *Id.* at 504. An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The interpretation and application of a court rule is a question of law that we review de novo. *Snyder v Advantage Health Physicians*, 281 Mich App 493, 500; 760 NW2d 834 (2008).

For a court to grant a motion for class certification, the requirements of MCR 3.501(A)(1) and (2) must be satisfied. *Henry*, 484 Mich at 488, 496-497. MCR 3.501(A)(1) requires that a proposed class of plaintiffs establish the following elements: (1) the class is suffi-

ciently numerous that joinder of all members is impracticable, (2) the common questions of fact or law predominate over matters relevant to only individual plaintiffs, (3) the claims of the class representatives are typical of the claims available to the entire class, (4) the class representatives will fairly and adequately represent the interests of the entire class, and (5) the class-action mechanism is superior to other methods of adjudication. *Id.* at 496-497. In evaluating the "superiority" element, MCR 3.501(A)(2) requires consideration of the following nonexclusive factors:

(a) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; or

(ii) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(b) whether final equitable or declaratory relief might be appropriate with respect to the class;

(c) whether the action will be manageable as a class action;

(d) whether in view of the complexity of the issues or the expense of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(e) whether it is probable that the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action; and

(f) whether members of the class have a significant
interest in controlling the prosecution or defense of sepa-
rate actions.

The trial court cannot rubber-stamp allegations in a
pleading that baldly proclaim that the class-
certification requirements have been satisfied, but the
trial court also cannot evaluate the merits of the
plaintiffs' claims. *Henry*, 484 Mich at 502-503. "A court
may base its decision on the pleadings alone *only if* the
pleadings set forth sufficient information to satisfy the
court that each prerequisite is in fact met." *Id.* at 502.
"If the pleadings are not sufficient, the court must look
to additional information beyond the pleadings to de-
termine whether class certification is proper." *Id.* at
503. "The court may allow the action to be maintained
as a class action, may deny the motion, or may order
that a ruling be postponed pending discovery or other
preliminary procedures." MCR 3.501(B)(3)(b).

We conclude that the state's argument fails for three
reasons. First, the trial court did not certify plaintiffs'
action as a class action; it merely denied the dispositive
motion until discovery could be completed. Second, the
trial court did not abuse its discretion by postponing the
class-certification question until discovery could be
completed. The trial court is required to consider facts
outside the pleadings if the pleadings are insufficient to
establish plaintiffs' entitlement to class certification.
*Henry*, 484 Mich at 502-503. Under MCR
3.501(B)(3)(b), the trial court could postpone the class-
certification question pending discovery.[1] Thus, its de-

---

[1] Indeed, when explaining that a court must examine "additional
information beyond the pleadings" if the pleadings are insufficient to
determine whether class certification is proper, the *Henry* Court ex-
pressly referred to a trial court's authority to permit discovery under
MCR 3.501(B)(3)(b). *Henry*, 484 Mich at 503 & n 35.

cision to do so did not fall outside the range of principled outcomes. Third, the trial court's denial of the state's motion on the basis that the motion was premature did not contravene the Supreme Court's order. The trial court was in fact obeying our Supreme Court's order to consider the class-certification question in light of *Henry*. On remand, a trial court is required to comply with a directive from an appellate court. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007).

Accordingly, the trial court did not err by denying the state's motion for summary disposition with respect to the issue of class certification.

### B. FAILURE TO STATE A CLAIM

Next, the state argues that the trial court erroneously denied its dispositive motion under MCR 2.116(C)(8) because plaintiffs had plainly failed to plead a proper cause of action. We disagree.

This Court previously held that plaintiffs had properly stated "claims upon which declaratory and injunctive relief can be awarded," thus defeating the state's motion under MCR 2.116(C)(8). *Duncan*, 284 Mich App at 343. Our Supreme Court later affirmed, albeit in result only, opining that solely on the basis of "plaintiffs' pleadings in this case, it is premature to make a decision on the substantive issues." *Duncan*, 486 Mich at 906. Thus, the only proper question for this Court to address is whether the state's argument is foreclosed under the law of the case doctrine.

Whether the law of the case doctrine applies is a question of law that we review de novo. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008). Generally, the law of the case doctrine provides that an appellate court's decision "will bind a trial court

on remand and the appellate court in subsequent appeals." *Schumacher*, 275 Mich App at 127. "Where a case is taken on appeal to a higher appellate court, the law of the case announced in the higher appellate court supersedes that set forth in the intermediate appellate court." *Johnson v White*, 430 Mich 47, 53; 420 NW2d 87 (1988). However, "[r]ulings of the intermediate appellate court . . . remain the law of the case insofar as they are not affected by the opinion of the higher court reviewing the lower court's determination." *Id.* The law of the case doctrine has been described as discretionary—as a general practice by the courts to avoid inconsistent judgments—as opposed to a limit on the power of the courts. *Foreman v Foreman*, 266 Mich App 132, 138; 701 NW2d 167 (2005). However, these decisions also acknowledge this Court's mandatory obligation to apply the doctrine when there has been no material change in the facts or intervening change in the law. *Id.*; see also *Reeves v Cincinnati, Inc (After Remand)*, 208 Mich App 556, 560; 528 NW2d 787 (1995) ("[T]he doctrine of law of the case is a bright-line rule to be applied virtually without exception."). Even if the prior decision was erroneous, that alone is insufficient to avoid application of the law of the case doctrine. *Bennett v Bennett*, 197 Mich App 497, 500; 496 NW2d 353 (1992); see also *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997).

We conclude that the law of the case doctrine applies in this case regarding whether plaintiffs pleaded a proper cause of action. We previously held that plaintiffs had pleaded causes of action for which declaratory and injunctive relief could be granted, and our Supreme Court affirmed. The state has not established a material change of fact or an intervening change in the law that would allow this Court to avoid application of the law of

the case doctrine and reconsider the state's motion for summary disposition under MCR 2.116(C)(8).

The state contends that plaintiffs should be judicially estopped from relying on the law of the case doctrine because they argued before the Supreme Court that "there is no (C)(8) motion before you with respect to whether relief can be granted against the Governor." Judicial estoppel prevents a party from asserting one position when that party "successfully and 'unequivocally' asserted a position in a prior proceeding that is 'wholly inconsistent' with the position now taken." *Szyszlo v Akowitz*, 296 Mich App 40, 51; 818 NW2d 424 (2012) (citation omitted). Significantly, "the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent." *Paschke v Retool Indus*, 445 Mich 502, 510; 519 NW2d 441 (1994). This "prior success" model "focus[es] less on the danger of inconsistent claims, than on the danger of inconsistent rulings." *Id.* at 510 n 4.

Judicial estoppel does not bar plaintiffs from relying on the law of the case doctrine to preclude reconsideration of the state's motion pursuant to MCR 2.116(C)(8) because the state has not established the requirements of judicial estoppel. Even if plaintiffs made a wholly inconsistent statement with respect to whether the state's motion under MCR 2.116(C)(8) was before the Supreme Court (the state has certainly not denied that it appealed this Court's ruling on the motion to the Supreme Court), the state has not shown that this assertion was successful.[2] To the contrary, our Supreme

---

[2] Plaintiffs explain that the comment at issue pertained not to whether *any* (C)(8) motion was pending before the Supreme Court, but to Justice

Court affirmed this Court's decision regarding the state's motion for summary disposition under MCR 2.116(C)(8), albeit in result only.[3]

Therefore, the trial court did not err by denying the state's motion for summary disposition under MCR 2.116(C)(8).

### C. STANDING

Next, the state argues that the trial court erred by failing to decide that plaintiffs lack standing in light of our Supreme Court's decision in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010) (*LSEA*). The state insists that the intervening change in the law of standing in Michigan under *LSEA* precludes application of the law of the case doctrine and, therefore, allows it to reargue the question of plaintiffs' standing. We disagree.

We review de novo the issues of standing and the application of the law of the case doctrine. *Kasben*, 278 Mich App at 470; *Manuel v Gill*, 481 Mich 637, 642-643; 753 NW2d 48 (2008).

When this case was initially decided, Michigan used the federal tripartite standing test that required a plaintiff to demonstrate the following: (1) an injury in fact that was concrete, particularized, and either actual or imminent, (2) that the injury was fairly

---

CORRIGAN's concern about whether these defendants were the proper parties, as compared to "the local funding units that are supposed to fund indigent defense in the counties," to which plaintiffs' counsel indicated that the state had not sought to dismiss the case on this basis.

[3] The state contends that the language of the April 30, 2010 Supreme Court order is far more reflective of what one might expect concerning a motion for summary disposition pursuant to MCR 2.116(C)(10), but clearly, discovery had not yet taken place and the state had never filed a motion for summary disposition under MCR 2.116(C)(10).

traceable (causally linked to) the defendant's con-
duct, and (3) that the remedy sought would likely
redress the plaintiff's injuries. *Mich Citizens for Water
Conservation v Nestlé Waters North America Inc*, 479
Mich 280, 294-295; 737 NW2d 447 (2007), overruled
by *LSEA*, 487 Mich at 378. However, our Supreme
Court in *LSEA* reinstituted Michigan's prior "pru-
dential" standing test, which automatically conferred
standing upon any party who has a "legal cause of
action," regardless of whether the underlying issue is
justiciable. *LSEA*, 487 Mich at 355, 372. The Court's
return to the old standard recognized that the pur-
pose of the doctrine was to promote "sincere and
vigorous advocacy" between the parties to the dis-
pute. *Id.* at 355 (citation and quotation marks omit-
ted). "Under this approach, a litigant has standing
whenever there is a legal cause of action" or the
requirements of MCR 2.605 to seek a declaratory
judgment are satisfied. *Id.* at 372. If a specific cause of
action at law does not exist for the plaintiff, then the
following analysis applies:

> A litigant may have standing in this context if the
> litigant has a special injury or right, or substantial interest,
> that will be detrimentally affected in a manner different
> from the citizenry at large or if the statutory scheme
> implies that the Legislature intended to confer standing on
> the litigant. [*Id.*]

Although the law of the case doctrine does not
necessarily apply when there has been an intervening
change in the law, *Sinicropi v Mazurek*, 279 Mich App
455, 464-465; 760 NW2d 520 (2008), our Supreme
Court clearly reinstated its original decision affirming
this Court's opinion in this case after it decided *LSEA*.
Our Supreme Court was surely aware of the change in

the law when it reinstated its prior decision.[4] See *Bennett v Weitz*, 220 Mich App 295, 300; 559 NW2d 354 (1996) ("[O]ur Supreme Court presumably is aware of contrary common-law rules when fashioning court rules."); *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007) ("[W]e assume that the trial court knew the law . . . ."). The law of case doctrine, therefore, applies because the Supreme Court implicitly decided under *LSEA* the issue of plaintiffs' standing. See, generally, *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000) (explaining that the law of the case doctrine applies to issues decided—explicitly or implicitly—on appeal).

Furthermore, we reject the state's suggestion that we discard *LSEA* and apply the federal standing test because the new prudential test is unworkable and could lead to a violation of the separation of powers. We are "bound by the rule of stare decisis to follow the decisions of our Supreme Court." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 447; 761 NW2d 846 (2008).

Accordingly, the trial court properly denied the state's motion for summary disposition with respect to standing.

### D. RES JUDICATA

Finally, the state argues that the doctrine of res judicata bars plaintiffs' claims because plaintiffs are attempting to litigate the effectiveness of their indigent

---

[4] In *LSEA*, the Supreme Court restored Michigan's standing jurisprudence to a limited, prudential doctrine that is less stringent than the prior federal standing test. The state has not shown how the prior rulings on standing were affected by *LSEA*; indeed, it appears that the change in the law concerning standing would favor plaintiffs' case and not the state's.

criminal defense counsel in this subsequent civil action when they could or should have raised the issue of ineffective assistance of counsel during their criminal proceedings. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law. *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001). "The applicability of the doctrine of res judicata is a question of law that is also reviewed de novo." *Id.*

The doctrine of res judicata precludes relitigation of a claim when it is predicated on the same underlying transaction that was litigated in a prior case. *Id.* at 334. The purpose of res judicata is to prevent inconsistent decisions, conserve judicial resources, and protect vindicated parties from vexatious litigation. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999). Michigan employs a broad approach to the doctrine of res judicata. *Id.*

The elements of res judicata are as follows: (1) the prior action was decided on the merits, (2) the prior decision resulted in a final judgment, (3) both actions involved the same parties or those in privity with the parties, and (4) the issues presented in the subsequent case were or could have been decided in the prior case. *Stoudemire*, 248 Mich App at 334. For purposes of res judicata, parties are in privity with each other when they are " 'so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert.' " *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 421; 733 NW2d 755 (2007), quoting *Adair v Michigan*, 470 Mich 105, 122; 680 NW2d 386 (2004).

We conclude that the state's argument that res judicata bars plaintiffs' claims lacks merit. Res judicata plainly applies to multiple claims arising out of a single transaction. The issues presented in this civil case regarding the state's alleged deprivation of plaintiffs' constitutional rights through a deficient indigent criminal defense system were not and could not have been raised in the plaintiffs' individual criminal prosecutions. See *Stoudemire*, 248 Mich App at 334. The remedy that plaintiffs seek through a class action, i.e., improvements to the indigent criminal defense system, could not have been achieved during plaintiffs' prior criminal proceedings. Without an action such as this, and assuming that plaintiffs' allegations are true, indigent persons who are accused of crimes in Michigan will continue to be subject to inadequate legal representation without remedy unless the representation adversely affects the outcome. Our system of justice requires effective representation, not ineffective but non-outcome-determinative representation. Further, as plaintiffs' proposed class includes indigent people who may not have been convicted of crimes, there has been no final decision on the merits in those cases. See *id*.

Affirmed. We lift the stay previously imposed by this Court and do not retain jurisdiction.

FITZGERALD, J., concurred with BECKERING, J.

WHITBECK, P.J. (*concurring in part and dissenting in part*). I concur in part and respectfully dissent in part. I concur in the majority's holding on class certification, judicial estoppel (with respect to result), and standing (with respect to result under the defendants' first formulation of the issue and fully with respect to the prospect of a panel of this Court overruling a Supreme Court decision).

But although these issues are important, they are actually ancillary to this case. The basic issue is whether the plaintiffs here, acting on behalf of themselves and all others similarly situated, have in their extensive civil complaint for declaratory and injunctive relief set forth claims on which relief can be granted. I do not believe that we can extract a law of the case from a series of confusing and contradictory Supreme Court orders to avoid this basic question. And I continue to believe that the claims plaintiffs set forth are impossible for them to prevail on, even under the most liberal interpretation of those claims and even presuming, as we must, that every single fact alleged is true. Simply put, there are no judicially cognizable claims to be found here. I would therefore reverse and remand for the entry of summary disposition in favor of defendants.

### I. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. OVERVIEW

The majority does an admirably concise job of laying out the background of this case, particularly given that our Court's decision in the original appeal consumed fully 146 single-spaced pages in the *Michigan Appeals Reports* (of which, I readily admit, my dissent took up fully 56 single-spaced pages).[1] Clearly, this is a case of considerable complexity, with numerous important and interwoven issues. And equally clearly, there were considerable disagreements at both our level and the Supreme Court level about the proper approach to these important issues and the proper outcome of the analysis.

Despite, however, the factual and procedural clarity of the majority opinion, there is one procedural aspect

---

[1] See *Duncan v Michigan*, 284 Mich App 246, 253-399; 774 NW2d 89 (2009) (*Duncan I*).

that justifies amplification: the various decisions of the Supreme Court on the original appeal of defendants, the state of Michigan and the Governor (collectively, "the State"), from this Court's original decision.[2]

The core of the problem is that, throughout the tortured history of this case before the Supreme Court, it is entirely unclear what conceptual approach the Court meant to use. On the one hand, perhaps that Court meant to use the standards for review of an MCR 2.116(C)(10) motion (no genuine issue of material fact and the moving party is entitled to judgment or partial judgment as a matter of law) when considering what was primarily an MCR 2.116(C)(8) motion (failure to state a claim upon which relief can be granted). On the other hand, perhaps the Court meant to hold that a motion under MCR 2.116(C)(8) can be premature if a party files such a motion early in the proceedings before discovery has begun. I apologize in advance for mixing some argumentation into this statement of the procedural history, which normally would involve no argument. But I know of no other way to outline the conceptual problem inherent in the Supreme Court's various orders, a problem that in my view has bedeviled this second appeal from the outset.

### B. THE SUPREME COURT ORDERS

#### 1. THE APRIL 30, 2010 ORDER

Following the State's appeal, on April 30, 2010, the Supreme Court entered the following order:

> Leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, *we hereby vacate the trial court's order granting the plaintiffs' motion for class certification and remand this*

---

[2] *Id.*

*case to the Ingham Circuit Court for consideration of the plaintiffs' motion for class certification in light of this Court's opinion in* Henry v Dow Chemical Co, *484 Mich 483* [772 NW2d 301] (2009).

As to the defendants' appeal of the decision on their motion for summary disposition, *we hereby affirm the result only of the Court of Appeals majority for different reasons. This case is at its earliest stages and, based solely on the plaintiffs' pleadings in this case, it is premature to make a decision on the substantive issues. Accordingly, the defendants are not entitled to summary disposition at this time.*[3]

The first paragraph of the April 30, 2010 order is reasonably straightforward: the Supreme Court vacated the trial court's order on class certification and remanded the case to the trial court for it to consider the motion for class certification of the indigent criminal defendants who are the plaintiffs here (the Duncan plaintiffs) in light of *Henry v Dow Chemical Company*.[4]

The second paragraph of the April 30, 2010 order is considerably less straightforward. The first clause of the first sentence ("As to the defendants' appeal of the decision on their motion for summary disposition") obviously concerned the denial of the State's motion for summary disposition. As the majority of this Court noted in its original opinion, the State brought its motion for summary disposition "pursuant to *MCR 2.116(C)(4)*,[5] *(7)*,[6] *and (8)*."[7] Therefore, the Supreme Court in its April 30, 2010 order must have considered the majority's decision in the original appeal in this

---

[3] *Duncan v Michigan*, 486 Mich 906 (2010) (*Duncan II*) (emphasis added).

[4] *Henry v Dow Chem Co*, 484 Mich 483; 772 NW2d 301 (2009).

[5] The trial court lacks subject-matter jurisdiction.

[6] The moving party is immune as a matter of law.

[7] *Duncan I*, 284 Mich App at 259 (emphasis added).

Court *under the court rules that the majority enumerated in its original opinion,* primarily MCR 2.116(C)(8). In this regard, I note that there was no reference whatever in the majority's opinion in the original appeal in this Court of the other common basis for summary disposition, MCR 2.116(C)(10).

But the second clause of the first sentence in the Supreme Court's April 30, 2010 order ("we hereby affirm the result only of the Court of Appeals majority for different reasons") adds a twist. Clearly, the Supreme Court approved the majority's decision in the original appeal to uphold the trial court's denial of summary disposition. But it did so for "different reasons." This is a relatively common jurisprudential technique that basically means "right result, wrong reason."[8] And, I believe we can presume, the following two sentences in the Supreme Court's April 30, 2010 order are there to explain the "right" reasons. But do they?

To answer that question, I believe it necessary to take the third sentence apart. Assume that what the Supreme Court really meant in that sentence was: This case is at its earliest stages, and it is premature to make a decision on the substantive issues. There is ample caselaw to the effect that, when considering a motion for summary disposition *under MCR 2.116(C)(10),* it is generally premature to decide such a motion until there has been an opportunity for full and complete discovery.[9] The basis for this approach is fairly easy to discern:

---

[8] See, e.g., *Klooster v City of Charlevoix,* 488 Mich 289, 293-294; 795 NW2d 578 (2011); *In re People v Jory,* 443 Mich 403, 425; 505 NW2d 228 (1993).

[9] *Davis v Detroit,* 269 Mich App 376, 379; 711 NW2d 462 (2006); see *Goldman v Loubella Extendables,* 91 Mich App 212, 218; 283 NW2d 695 (1979).

it allows the party asserting the claims to flesh out the facts through interrogatories, requests to admit, depositions, and the like.[10]

*But here, there was no motion at the trial court level under MCR 2.116(C)(10).* Therefore, the caselaw applicable to MCR 2.116(C)(10) simply has no bearing. Summary disposition is not premature "when a case can be quickly resolved with a ruling on an issue of law."[11] The trial court appropriately grants summary disposition under MCR 2.116(C)(8) when "the claims alleged are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'"[12] Viewed in that light, I must with all due respect suggest that the Supreme Court in its April 30, 2010 order applied the wrong standard to a motion decided under MCR 2.116(C)(8).

But there is a second way to parse the sentence. Assume that what the Supreme Court really meant was: Solely on the basis of the plaintiffs' pleadings in this case, it is premature to make a decision on the substantive issues. Frankly, this interpretation is even worse. Motions for summary disposition under MCR 2.116(C)(8) are *always* based solely on a plaintiff's pleadings.[13] Further, all factual allegations are taken as true and any reasonable inferences or conclusions are construed in a light most favorable to the nonmoving party.[14] And courts must deny the motion unless the

---

[10] See *Dep't of Social Servs v Aetna Cas & Surety Co*, 177 Mich App 440, 445-446; 443 NW2d 420 (1989).

[11] *Mackey v Dep't of Corrections*, 205 Mich App 330, 333-334; 517 NW2d 303 (1994).

[12] *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999), quoting *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

[13] *Maiden*, 461 Mich at 119.

[14] *Id.*

claims are so clearly unenforceable *as a matter of law that no factual development can possibly justify recovery.*[15]

MCR 2.116(D)(4) provides that a party may raise the grounds under MCR 2.116(C)(8) "at any time."[16] Thus, a motion under MCR 2.116(C)(8) *cannot* be premature if it is filed after a party serves the complaint. At this stage in the proceedings, the rules deliberately stack the deck in favor of the nonmoving party—usually the plaintiff. And that party cannot further flesh out the case to its benefit. In essence, the nonmoving party's case is factually as good as it ever will get when facing a motion under MCR 2.116(C)(8) because we must take every single fact that the nonmoving party alleged in the complaint as true. Holding a motion under MCR 2.116(C)(8) in abeyance—as the Supreme Court essentially did in the last sentence of the second paragraph of its April 30, 2010 order ("Accordingly, the defendants are not entitled to summary disposition at this time.")— defeats the very purpose of MCR 2.116(C)(8), which is to determine whether a plaintiff's pleadings *alone* set out claims on which a court can grant relief.

In summary, the Supreme Court's April 30, 2010 order puts me in a considerable quandary. I think I know what the first paragraph of that order means: that the Supreme Court vacated the trial court's order on class certification and remanded to the trial court to consider the Duncan plaintiffs' motion for class certification in light of *Henry v Dow Chemical Company*.

---

[15] *Id.*

[16] This Court has affirmed in cases in which the trial court granted summary disposition under MCR 2.116(C)(8) even before the moving party filed an answer.

But I must admit that I really do not know what the second paragraph of that order means. There is no reasonable construction of that paragraph that provides the trial court or this Court any guidance concerning how to proceed. Are we to assume that the Supreme Court's "different reasons" meant for us to apply MCR 2.116(C)(10) standards to an MCR 2.116(C)(8) motion? Or are we to assume that the Supreme Court's "different reasons" meant that an MCR 2.116(C)(8) motion really can be premature, despite the contrary language of the court rule? The only thing that I am sure of is that the State's original appeal in the Supreme Court was in front of that Court on the basis of the trial court's denial of the State's motion under MCR 2.116(C)(8), a denial that the majority of the prior panel in this matter specifically affirmed.[17]

### 2. THE JULY 16, 2010 RECONSIDERATION ORDER

Following the State's motion for reconsideration of the April 30, 2010 order, the Supreme Court entered the following order:

> We vacate our order dated April 30, 2010. On reconsideration, leave to appeal having been granted and the briefs and oral argument of the parties having been considered by the Court, we reverse the June 11, 2009 judgment of the Court of Appeals for the reasons stated in the Court of Appeals dissenting opinion. The defendants are entitled to summary disposition because, as the Court of Appeals dissenting opinion recognized, the plaintiffs' claims are not justiciable. Accordingly, we remand this case to the Ingham Circuit Court for entry of summary disposition in favor of the defendants. The motion for stay is denied.[18]

Justice MARKMAN concurred, stating in part:

---

[17] *Duncan I*, 284 Mich App at 255, 343.

[18] *Duncan v Michigan*, 486 Mich 1071, 1071 (2010) (*Duncan III*).

I concur with the order granting defendant's [sic] motion for reconsideration, vacating this Court's order of April 30, reversing the Court of Appeals, and remanding to the trial court for entry of summary disposition in favor of defendants. In our prior order, we affirmed the result of the Court of Appeals, asserting that because "[t]his case is at its earliest stages and, based solely on the plaintiffs' pleadings in this case, it is premature to make a decision on the substantive issues." This was error for two reasons. *First, as defendants observe, this order vacated the Court of Appeals' opinion without articulating any governing standards. Second, it is not premature to decide this case because the precise issue presented is whether plaintiffs have stated a claim on which relief can be granted, and this, as well as the threshold justiciability issues, can be determined on the face of the complaint.*[19]

Chief Justice MARILYN KELLY dissented. With respect to the second issue that Justice MARKMAN identified—whether the Duncan plaintiffs had stated a claim on which relief could be granted—Chief Justice KELLY stated:

At this preliminary stage, plaintiffs' claims adduce facts that establish that they have standing, and that their claims are ripe. *Also, they state a claim upon which relief can be granted.* Today's order slams the courthouse door in plaintiffs' face for no good reason.[20]

I agree, as set out earlier, that the precise issue before the Supreme Court was whether the Duncan plaintiffs had stated a claim on which relief could be granted, the standard set out in MCR 2.116(C)(8). Indeed, I note

---

[19] *Id.* (MARKMAN, J., concurring) (emphasis added). Justices CORRIGAN and YOUNG joined the statement of Justice MARKMAN. According to Justice CORRIGAN, Justice WEAVER also voted in favor of the July 16, 2010 reconsideration order. *Duncan v Michigan,* 488 Mich 957, 962 n 1 (2010) (*Duncan IV*).

[20] *Duncan III,* 486 Mich at 1075 (emphasis added). Justices CAVANAGH and HATHAWAY joined the statement of Chief Justice KELLY.

that Chief Justice KELLY, joined by Justices CAVANAGH and HATHAWAY, also appeared to agree with that formulation of this issue. But this unanimity, at least as it related to the type of issue before the justices, was not to last long.

### 3. THE NOVEMBER 30, 2010 RECONSIDERATION ORDER

Following the Duncan plaintiffs' motion for reconsideration of the July 16, 2010 reconsideration order, the Supreme Court entered the following order:

> On order of the Court, the motion for reconsideration of this Court's July 16, 2010, order is considered, and it is granted. We vacate our order dated July 16, 2010, and we reinstate our order in this case dated April 30, 2010, because reconsideration thereof was improperly granted.[21]

This order is clear enough. It reinstates the Supreme Court's April 30, 2010 order, word for word, and with all its conceptual problems concerning the method for reviewing the trial court's denial of the State's motion for summary disposition under MCR 2.116(C)(8). Indeed, the concurring statement of Justice DAVIS made this point crystal clear:

> I agree with Chief Justice KELLY's dissent from the July 16, 2010, order, stating that the prior motion for reconsideration should have been denied because it added nothing new. To the extent the unanimous April 30, 2010, order was reconsidered because of concerns that it could not be complied with, I have reviewed the record thoroughly and I do not agree with those concerns. Furthermore, if those concerns eventually prove warranted, the trial court should, and is in the best position to, make that evaluation. The trial court has not yet had the opportunity to do so. *As the April 30, 2010, order stated, this case is at its earliest*

---

[21] *Duncan IV*, 488 Mich at 957.

*stages and a decision on its substantive merits is premature,
but class certification should be reconsidered in light of
Henry v Dow Chem Co, 484 Mich 483 (2009).* The original,
unanimous order of this Court was correct, and no suffi-
cient basis was presented for this Court to have reconsid-
ered it.[22]

Chief Justice KELLY reiterated the same point, stat-
ing:

> The dissenters have yet to raise a single argument of
> which this Court was unaware when it originally decided
> this case eight months ago. Indeed, Justice MARKMAN's
> dissenting statement consists almost entirely of a series of
> quotations from the Court of Appeals dissenting opinion.
> *He also claims that it is not premature to make a final
> decision on this case because the issues involved are fully
> laid out on the face of the complaint. We rejected that precise
> argument in our April order.*[23]

Justice MARKMAN, joined by Justices CORRIGAN and
YOUNG, dissented on the same grounds that he laid out
in his concurrence with the July 16, 2010 reconsidera-
tion order.[24] Justice CORRIGAN also separately dissented,
joined by Justices YOUNG and MARKMAN, emphasizing
the lack of standards contained in the April 30, 2010
order.[25] In this regard, Justice CORRIGAN quoted a recent
article illustrating the " 'state of confusion created by
the lack of a clear standard to which courts can look
when adjudicating these types of systemic reform
cases.' "[26] That article also stated:

---

[22] *Id.* at 957-958 (DAVIS, J., concurring) (emphasis added). Justice
HATHAWAY joined the statement of Justice DAVIS.

[23] *Id.* at 960 (KELLY, C.J., concurring) (emphasis added).

[24] *Id.* at 958-960 (MARKMAN, J., dissenting).

[25] *Id.* at 961-966 (CORRIGAN, J., dissenting).

[26] *Id.* at 964, quoting Chiang, *Indigent defense invigorated: A uniform
standard for adjudicating pre-conviction Sixth Amendment claims,* 19
Temp Pol & Civ Rts L R 443, 461 (2010).

Unfortunately, as evidenced by the murky opinions issued in Hurrel-Harring[27] and Duncan many of the positive decisions lack clarity as to the standard to which plaintiffs are held, decreasing their precedential value for successive litigants and courts.[28]

The standards issue is, of course, vitally important. But central to my point on the procedural status of the issue before the Court, the November 10, 2010 reconsideration order reinstates the exact conceptual problem that was present in the April 30, 2010 order. Justice DAVIS's statement illustrates this problem nicely. By noting that "this case is at its earliest stages," Justice DAVIS appeared to imply that the MCR 2.116(C)(10) standards regarding discovery of material facts apply to an MCR 2.116(C)(8) motion.[29] By noting that "a decision on its substantive merits is premature," Justice DAVIS appeared to imply that a decision on an MCR 2.116(C)(8) motion can, in fact, be premature.[30] Both of these implications confound the settled jurisprudence in Michigan on MCR 2.116(C)(8) motions. The Supreme Court's final reconsideration order in this matter did nothing to alleviate this confusion.

### 4. THE DECEMBER 29, 2010 RECONSIDERATION ORDER

Following the State's motion for reconsideration of the November 30, 2010 reconsideration order, the Supreme Court issued the following order:

> On order of the Court, the motion for reconsideration of this Court's November 30, 2010, order is considered, and it is denied, because it does not appear that the order was entered erroneously.[31]

---

[27] *Hurrell-Harring v State*, 15 NY3d 8; 904 NYS2d 296; 930 NE2d 217 (2010).

[28] Chiang, p 462.

[29] *Duncan IV*, 488 Mich at 958 (DAVIS, J., concurring).

[30] *Id.*

[31] *Duncan v Michigan*, 488 Mich 1011, 1011 (2010) (*Duncan V*).

Justice CORRIGAN dissented, mainly on the lack-of-standards grounds, but did refer to Justice MARKMAN's earlier concurrence with the July 16, 2010 reconsideration order, in which he stated that " 'it is not premature to decide this case because the precise issue presented is whether plaintiffs *have stated a claim on which relief can be granted, and this, as well as the threshold justiciability issues, can be determined on the face of the complaint.*' "[32] There were other concurrences and dissents,[33] but they did not directly address the question of whether the Duncan plaintiffs had stated a claim on which relief could be granted, the standard set out in MCR 2.116(C)(8).

### C. CONCLUSION

The proceedings before the Supreme Court in this matter have something of a *Jarndyce v Jarndyce* flavor to them. Although this case has not dragged on for generations, as did the fictional case in Charles Dickens's *Bleak House*, it is approaching its six-year anniversary. And the case could well serve as a ready reference point for the advocates of critical legal theory. To say that the confusing legal posture in which we find ourselves has undertones relating to the philosophical composition of the Supreme Court[34] would be an understatement.

---

[32] *Id.* at 1014 n 4, quoting *Duncan III*, 486 Mich at 1071 (emphasis added).

[33] See *Duncan V*, 488 Mich at 1017-1019.

[34] See *Duncan v Michigan*, 488 Mich at 1019, 1022 (2010) (order denying motion to deem earlier release of statements as a final order) (CORRIGAN, J., dissenting) (" 'The majority's lack of restraint is especially troubling given that the electorate already decided on a newly composed Court in the November 2, 2010, election. Undaunted, the majority, now paced by the calendar alone, is content in its attempt to foreclose reconsideration. I believe that the majority's handling of this case belies the way an appellate court should function. Appellate courts should be marked by steadiness and

But we must analyze and decide the case. In undertaking my analysis, I will rely on two points from the various Supreme Court orders that are uncontestable. First, the Supreme Court vacated the trial court's order on class certification and remanded to the trial court to consider the Duncan plaintiffs' motion in light of *Henry v Dow Chemical Company*. Second, the precise issue before the Supreme Court, in all of its orders, was whether the Duncan plaintiffs had stated a claim on which relief could be granted, the standard set out in MCR 2.116(C)(8).

The fog of judicial combat obscures all else. Only Chief Justice KELLY's single sentence in a dissenting statement to the effect that the Duncan plaintiffs have stated a "claim upon which relief can be granted"[35] illuminates the murk with any specificity. And I am completely uncertain about what this solitary, summary sentence means in regard to the law of this case.

## II. CLASS CERTIFICATION

### A. THE SUPREME COURT'S APRIL 30, 2010 ORDER

As I have outlined, the Supreme Court's order of April 30, 2010, vacated the trial court's order on class certification and remanded the case to the trial court to consider the Duncan plaintiffs' motion for class certification in light of *Henry v Dow Chemical Company*.[36]

### B. THE TRIAL COURT'S DECISION

On October 26, 2011, the State filed a renewed motion for summary disposition in the trial court. The

---

consistency, not gamesmanship in a race against the clock.' "), quoting *Duncan V*, 488 Mich at 1013 (CORRIGAN, J., dissenting).

[35] *Duncan III*, 486 Mich at 1075 (KELLY, C.J., dissenting); also see *Duncan IV*, 488 Mich App at 960 (KELLY, C.J., concurring).

[36] *Duncan II*, 486 Mich at 906.

trial court denied this motion on December 15, 2011. With respect to class action certification, the trial court also denied the motion, holding that it was premature to decide the class certification issue because discovery was necessary.

### C. THE STATE'S APPEAL

On December 22, 2011, the State filed in this Court a timely interlocutory application for leave to appeal, an emergency motion for stay, and a motion for immediate consideration. On March 1, 2012, this Court granted the State's application and motions, staying further trial court proceedings pending resolution of this appeal or further order of this Court.

On appeal, the State essentially argues two points. First, the State contends that

> when the Michigan Supreme Court remanded the class certification issue for consideration under *Henry v Dow Chemical*, it contemplated review of the *pending* motion for class certification—not a new motion for class certification filed after a year of overbroad discovery. . . . Plaintiffs moved for class certification, with no discovery request, shortly after filing their Complaint. The Supreme Court Order was a mandate for the Circuit Court to consider that pending motion in light of *Henry*. Yet the Circuit Court would not consider the class action issue until discovery was complete.

Second, the State contends that no amount of discovery will change the class certification analysis. No matter what kind of factual record the Duncan plaintiffs develop, the State argues, they cannot demonstrate commonality or superiority, two of the essential elements for class action certification.

### D. STANDARD OF REVIEW

I agree with the majority's statement of the appro-

priate standard of review in this case. Under that standard, the analysis a trial court must undertake in order to determine whether to certify a proposed class may involve making both findings of fact *and* discretionary determinations.[37] Therefore, we review a trial court's factual findings regarding class certification for clear error and the decisions within the trial court's discretion for abuse of discretion.[38] Further, state courts "have broad discretion to determine whether a class will be certified."[39] An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes.[40]

### E. THE MAJORITY'S DECISION

With respect to the State's first argument—that the trial court should have considered the State's motion on class action certification with respect to the *pending* class action—the majority contends that the trial court was in fact obeying the Supreme Court's order to consider the class certification question *in light of Henry*. I agree. And I also agree that *Henry* specifically allows a trial court to permit discovery under MCR 3.501(B)(3)(b), which states that "[t]he court may allow the action to be maintained as a class action, may deny the motion, *or may order that a ruling be postponed pending discovery or other preliminary procedures.*" (Emphasis added.) Accordingly, the trial court could not have abused and did not abuse its discretion when postponing a ruling on class certification in light of the

---

[37] *Henry*, 484 Mich at 495-496.

[38] *Id.* at 495.

[39] *Id.* at 503-504.

[40] *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

explicit language in the Supreme Court's April 30, 2010 order, *Henry*, and MCR 3.501(B)(3)(b).

With respect to the State's second argument—that the Duncan plaintiffs cannot demonstrate commonality or superiority, two of the essential elements for class action certification—if this were the issue before us, I would agree with the State, for the reasons that I outlined in my original dissent in *Duncan I*.[41] But this is *not* the issue before us. To repeat, the Supreme Court in its April 30, 2010 order made it clear that the trial court on remand should reexamine the class action aspects this case in light of *Henry*. *Henry* and MCR 3.501(B)(3)(b) allow discovery under these circumstances. As the majority states, a trial court must comply with a directive from an appellate court. Again, the trial court could not have abused and did not abuse its discretion when complying with the Supreme Court's April 30, 2010 order. I therefore concur with the majority on this issue.

I do note that the State asserts that, at the time they filed their complaint, not a single one of the Duncan plaintiffs had gone to trial or otherwise had his or her claims adjudicated. Further, according to the State, not a single one of the Duncan plaintiffs later attempted to have his or her assigned attorney replaced. If this is accurate, it certainly raises the question of whether the Duncan plaintiffs adequately, or even at all, now represent the class they seek to represent—all indigent adult persons who rely or will rely on the counties to provide them with defense services in felony cases[42]—since the Duncan plaintiffs were apparently satisfied with the representation that they received. But the State does not press this argument and, for that reason, I decline to analyze it.

---

[41] See *Duncan I*, 284 Mich App at 395 (WHITBECK, J., dissenting).

[42] *Id.* at 391.

### III. FAILURE TO STATE A CLAIM

#### A. THE SUPREME COURT'S ORDERS

To paraphrase my comments on the various Supreme Court orders as they relate to the State's assertion that the Duncan plaintiffs have failed to state a claim on which relief can be granted, I find them supremely confusing. We can be certain that the precise issue before the Supreme Court, in all of its orders, was whether the Duncan plaintiffs stated a claim on which relief could be granted, the standard set out in MCR. 2.116(C)(8). We can be certain that this Court denied the State's motion for summary disposition under MCR 2.116(C)(8). We can be certain that the Supreme Court upheld this denial, but "for different reasons."

However, by analyzing the text of the various orders, we can speculate that one of those different reasons was the notion that since this case was in its "earliest stages," discovery might be necessary. We can also speculate that one of those reasons was the notion that ruling on a MCR 2.116(C)(8) motion would be "premature." We can further observe that applying MCR 2.116(C)(10) standards to a motion under MCR 2.116(C)(8) is inappropriate, the proverbial square peg in a round hole. We can finally observe that holding an MCR 2.116(C)(8) motion to be premature is contrary to settled law concerning those motions, the pounding of a larger square peg into the same round hole. Beyond that, there is little more that we can say and much less of which we can be certain.

#### B. THE TRIAL COURT'S DECISION

As stated, in October 2011 the State filed a renewed motion for summary disposition in the trial court. The trial court denied this motion in December 2011. With

respect to the State's assertion that the Duncan plaintiffs had failed to state a claim on which relief could be granted, the trial court denied the motion, holding that it had previously held that the Duncan plaintiffs had stated a claim on which relief could be granted and that decision had been affirmed by this Court and the Supreme Court.

## C. THE STATE'S APPEAL

On appeal, the State essentially argues three points. The first argument, at the threshold, relates to judicial estoppel. The State asserts that

> [j]udicial estoppel is properly applied here. Plaintiffs' counsel argued to the Michigan Supreme Court during oral argument on April 14, 2010 that "there is no (C)(8) motion before you with respect to — on whether relief can be granted against the Governor." . . . Plaintiffs ultimately prevailed because of, and thus benefitted from, this unequivocal representation, since the Supreme Court's April 30, 2010 Order affirming the denial of summary disposition stated that "it is premature to make a decision on the substantive issues" and effectively treated the earlier motion as fact-based under MCR 2.116(C)(10) rather than pleadings based under MCR 2.116(C)(8). . . . Having successfully benefitted from this representation, Plaintiffs cannot now invoke the authority of the trial court to override its earlier "bargain" with the Michigan Supreme Court and argue that this (C)(8) motion was previously raised and denied.

The State's second argument is that the Duncan plaintiffs have not pleaded facts sufficient to demonstrate a violation of US Const, Am VI and XIV or Const 1963, art 1, §§ 17 and 20 on the basis of a generalized claim of widespread systemic deficiencies in Michigan's indigent defense system. The State goes on to assert that the Duncan plaintiffs have not established the

requisite prejudice to the process in any individual criminal case arising from the alleged systematic deficiency such that the reliability of the ultimate outcome is suspect.

The State's third, and very much related, argument is that allowing the Duncan plaintiffs' preconviction claims to go forward on the facts pleaded requires the presumption that the State has per se so prejudiced indigent criminal defendants that they have been or will be denied their constitutional right to effective counsel and a fair trial.

### D. STANDARD OF REVIEW

We review de novo a trial court's order denying summary disposition under MCR 2.116(8).[43] The trial court properly grants a motion MCR 2.116(C)(8) when "the claims alleged are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'"[44] A pleader's conclusory statements, when unsupported by facts, are not sufficient to state a cause of action.[45]

### E. THE MAJORITY'S DECISION

#### 1. JUDICIAL ESTOPPEL

The majority holds that, even if the Duncan plaintiffs' counsel made a wholly inconsistent statement, "the state has not shown that such assertion was successful." Frankly, I think this is reading too much into the comment. Whether counsel for the Duncan

---

[43] *Maiden*, 461 Mich at 118.

[44] *Id.* at 119, quoting *Wade*, 439 Mich at 163.

[45] *Kramer v Dearborn Hts*, 197 Mich App 723, 725; 496 NW2d 301 (1993).

plaintiffs simply made an incorrect, but extraneous, assertion in the heat of a difficult argument before the Supreme Court or whether the Duncan plaintiffs are correct in their assertion that the State is taking counsel's statement out of context, it would be indeed a miscarriage of justice to decide this important issue on the basis of a single, stray comment. Thus, while I concur in the majority's result, I do not adopt its reasoning as I consider this something of a nonissue.

### 2. LAW OF THE CASE

The majority asserts that the "only proper question for this Court to address is whether the state's argument [on failure to state a claim] is foreclosed under the law of the case doctrine." The majority goes on to conclude that "the law of the case doctrine applies in this case regarding whether [the Duncan] plaintiffs pleaded a proper cause of action" and asserts that the State has not established a material change of fact or an intervening change in the law that would allow us to avoid the application of the law of the case doctrine "and reconsider the state's motion for summary disposition under MCR 2.116(C)(8)."

I do not agree and I respectfully dissent for three reasons. *First*, bluntly, I do not know what the law of the case in this matter really is, given the mélange of Supreme Court orders with which we must contend. I hope that I have adequately explained my position on this aspect. I have not been quite so bold as to state that, in its ultimate disposition, the Supreme Court was simply wrong on the law. But I do believe that the various orders with their contradictory and conclusionary statements cause sufficient confusion to make the proper application of the law of the case doctrine a decidedly dicey proposition.

*Second,* the Supreme Court effectively held the State's motion under MCR 2.116(C)(8) in abeyance through the last paragraph of its April 30, 2010 order ("Accordingly, the defendants are not entitled to summary disposition *at this time.*").[46] The words "at this time" certainly imply that the State was a liberty to file another motion for summary disposition at a later time, and this is exactly what the State did. Given this rather open invitation, there is considerable doubt in my mind that the law of the case doctrine applies at all.

*Third,* and without parsing the wording of the majority's holding too closely, we are not reconsidering the State's original motion. Rather, we are considering a new motion, in which the State does assert material changes of fact and an intervening change in the law. In my view, these three reasons combined constitute solid grounds on which to decline to apply the law of the case doctrine.

### 3. ACTUAL PREJUDICE

A simple syllogism summarizes the State's argument on this aspect of the case:

**Major Premise:** Prejudice is an essential component of an ineffective assistance of counsel claim at any stage of the proceeding.

**Minor Premise:** The Duncan plaintiffs cannot establish prejudice.

**Conclusion:** Therefore, the Duncan plaintiffs have failed to state a claim on which relief can be granted.

There can be no question that the State's major premise is correct. The Sixth Amendment of the United States Constitution provides that "[i]n all criminal

---

[46] *Duncan II,* 486 Mich at 906 (emphasis added).

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[47] The Michigan Constitution contains the same right.[48] In *Gideon v Wainwright*, the United States Supreme Court held that the Sixth Amendment right to counsel was "obligatory" with regard to the states through the operation of the Fourteenth Amendment.[49] And in *Strickland v Washington*, the Court laid out a two-pronged standard for evaluating the effectiveness of counsel.[50] As I said in my original dissent in *Duncan I*:

> [The Court] enunciated a two-part standard for assessing counsel's assistance to a convicted defendant who claims that such assistance was "so defective as to require reversal of a conviction or death sentence . . . ." The first component required a showing that counsel's performance was "deficient"; that is, that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The second component required a *showing that the deficient performance prejudiced the defense*; that is, that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[51]

There can also be no question that the State's minor premise is correct: the Duncan plaintiffs cannot show actual, individualized deficient performance by their counsel. At the time of the filing of the original complaint, according to the State, appointed counsel represented each of the Duncan plaintiffs, criminal charges

---

[47] US Const, Am VI.

[48] Const 1963, art 1, § 20.

[49] *Gideon v Wainwright*, 372 US 335, 342; 83 S Ct 792; 9 L Ed 2d 799 (1963).

[50] *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

[51] *Duncan I*, 284 Mich at 354-355 (WHITBECK, J., dissenting) (citations omitted; emphasis added).

were pending because none of the Duncan plaintiffs had gone to trial or otherwise had their cases adjudicated, and none of the Duncan plaintiffs had attempted to have their assigned counsel replaced.[52] Further, according to the State, each of the Duncan plaintiffs has been adjudicated guilty and sentenced. (The record remains silent regarding whether any of these individuals have made postconviction claims of ineffective assistance of counsel.) Thus, the Duncan plaintiffs' claims of prejudice are merely conclusory statements; the Duncan plaintiffs cannot support them with facts.

There is a simple reason that the Duncan plaintiffs did not—and did not even attempt to—show actual, individualized prejudice flowing from assigned counsel's allegedly deficient performance: the Duncan plaintiffs made all of their claims *preconviction.* By the very nature of such claims, it would be impossible for the Duncan plaintiffs to show actual, individualized prejudice because any deficient performance had not yet occurred. If it were that simple, the State's conclusion that the Duncan plaintiffs failed to state claims on which relief could be granted would undoubtedly be correct, and this lawsuit would have been over years ago. But, of course, it is not that simple. As a substitute for actual, individualized prejudice, the Duncan plaintiffs have essentially attempted to show prejudice per se.

### 4. PREJUDICE PER SE

Another simple syllogism summarizes the State's argument on this aspect of the case:

**Major Premise:** Absent certain blatant instances amounting to the denial of counsel (that is, prejudice

---

[52] *Id.* at 357-358.

per se), appointed counsel is presumed competent unless a defendant can meet his or her burden to demonstrate a constitutional violation.[53]

**Minor Premise:** The Duncan plaintiffs cannot establish prejudice per se.

**Conclusion:** Therefore, the Duncan plaintiffs have failed to state a claim on which relief can be granted

As the State points out, there are only a limited number of "blatant instances" in which we can presume prejudice. They include:

• when counsel has systemically been denied[54] or is systematically denied at a critical stage;[55]

• when counsel is not present for a postindictment line-up (a critical stage);[56]

• when the right to a pretrial hearing has been denied;[57] and

• when there is joint representation of codefendants and a conflict of interest is apparent.[58]

Otherwise, the United States Supreme Court has held that "[c]laims of ineffective assistance are generally to be resolved through an inquiry into the fairness of a particular prosecution, and not by per se rulemak-

---

[53] *United States v Cronic*, 466 US 648, 658; 104 S Ct 2039; 80 L Ed 2d 657 (1984).

[54] See *Coleman v Alabama*, 399 US 1, 7; 90 S Ct 1999; 26 L Ed 2d 387 (1970), citing *Powell v Alabama*, 287 US 45, 69; 53 S Ct 55; 77 L Ed 158 (1932).

[55] *Cronic*, 466 US at 659.

[56] *United States v Wade*, 388 US 218, 236-237; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[57] *Pugh v Rainwater*, 483 F2d 778, 787 (CA 5, 1973), rev'd in part on other grounds by *Gerstein v Pugh*, 420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975).

[58] *Holloway v Arkansas*, 435 US 475, 488-489; 98 S Ct 1173; 55 L Ed 2d 426 (1978).

ing."[59] Since none of the Duncan plaintiffs' claims fit into the specific categories that the Court enumerated as constituting prejudice per se, the question becomes whether there are other grounds on which to recognize those preconviction claims. I conclude there are not.

As the State points out, neither the United States Supreme Court nor the Michigan Supreme Court has recognized the type of preconviction claims that the Duncan plaintiffs assert here, and for good reason. And as I pointed out in my original dissent in *Duncan I*,[60] and as Justice MARKMAN summarized in a mercifully concise fashion in *Duncan III*,[61] there are a variety of factors—including standing, ripeness, causation, the type of claim the Duncan plaintiffs assert, the type of relief the Duncan plaintiffs seek, and, ultimately, justiciability—that lead, inexorably, to the conclusion that the Duncan plaintiffs have not stated a claim on which relief can be granted. Simply put, there are no grounds on which to recognize their preconviction claims, as they are entirely speculative in nature.

The causation factor alone illustrates the intractable problems that the Duncan plaintiffs face with their preconviction claims. As I said in my dissent in *Duncan I*:

> The majority states that throughout its opinion it has indicated that the Duncan plaintiffs will have to establish a "causal connection between the deficient performance and the indigent defense systems being employed." That is simply not the causal connection that is relevant in this case. The Duncan plaintiffs have sued the state and the

---

[59] *In re Forfeiture Hearing as to Caplin & Drysdale, Chartered*, 837 F2d 637, 647 (CA 4, 1988), citing *Cronic*, 466 US 648, and *Strickland*, 466 US 668.

[60] *Duncan I*, 284 Mich App at 343-399 (WHITBECK, J., dissenting).

[61] *Duncan III*, 486 Mich at 1071-1073 (MARKMAN, J., concurring).

Governor. Therefore, the relevant causal connection must be between the alleged inaction of the state and the Governor and the alleged deficient performance at the local level.

Now, as if repeating a mantra, the Duncan plaintiffs repeatedly aver that there is such a causal connection. But there is not a single fact that they allege in their complaint that supports their generalized assertions that the alleged inaction of the state and the Governor has *caused* the deficient performance that the Duncan plaintiffs outline. Moreover, simply repeating the same words again and again does not change their character.

Undoubtedly, the complaint alleges causation. But it does not allege the *necessary* causation. Unsupported generalized allegations are just that, unsupported and generalized. With all due respect to the Duncan plaintiffs and the majority, there is no way it can possibly be proven that the failure of the state and the Governor to do an undefined something specifically *caused* the deficiencies they allege. Intuitively, one might guess that the something is correlated with the alleged deficiencies, even though that something remains undefined beyond mere generalized assertions of inaction. But correlation is not causation, and a hunch is not a basis upon which a court can grant declaratory and injunctive relief.[62]

F. CONCLUSION

The quoted statement is as true today as it was in 2009. The majority here fails to address the central issue in this case: whether the Duncan plaintiffs have stated a claim on which relief can be granted. While I agree that judicial estoppel does not apply, I also conclude that the law of the case doctrine does not bar our consideration of this central issue. And I further conclude that the Duncan plaintiffs cannot establish that they were prejudiced, whether

---

[62] *Duncan I*, 284 Mich App at 372-373 (WHITBECK, J., dissenting) (citations omitted).

through demonstrating actual prejudice or by adequately supporting the substitution of a presumption of prejudice per se for the actual prejudice requirement inherent in *Strickland.* I would reverse the trial court on this issue and remand for the entry of summary disposition in favor of the State.

### IV. STANDING

#### A. THE SUPREME COURT'S ORDERS

The Supreme Court's orders do not address the subject of standing.

#### B. THE TRIAL COURT'S DECISION

As stated, in October 2011 the State filed a renewed motion for summary disposition in the trial court. The trial court denied this motion in December 2011. With respect to the State's assertion that the Duncan plaintiffs lacked standing, the trial court ruled that it had previously ruled that the Duncan plaintiffs had standing.

#### C. THE STATE'S APPEAL

On appeal, the State argues two points. First, the State asserts that the Duncan plaintiffs' claims are not justiciable because plaintiffs lack standing under Michigan's new standard contained in *Lansing Schools Education Association v Lansing Board of Education.*[63] Second, and alternatively, the State asserts that the *Lansing Schools* standard is unworkable and should be overturned because it allows a litigant to bring a claim without demonstrating an actual injury.

---

[63] *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010).

D. STANDARD OF REVIEW

Whether a party has standing is a question of law that we review novo.[64]

E. THE MAJORITY'S DECISION

Noting that while the law of the case doctrine does not necessarily apply when there has been an intervening change in the law, the majority reasons that "our Supreme Court clearly reinstated its original decision affirming this Court's opinion in this case *after* it decided" *Lansing Schools*.[65] Chronologically, this is certainly true. But I am not sure that it decides the issue as the State has postured it.

In this regard, I repeat my conclusion, stated at length in *Duncan I*,[66] that because of their peculiar preconviction status in the case, the Duncan plaintiffs lacked standing.[67] I remain convinced that, for the same reason, the Duncan plaintiffs continue to lack standing under even the more relaxed standards contained in *Lansing Schools*. But the State's position appears to be that since the law has changed—even though the change, as the majority notes, has made it easier to show standing—the trial court erred when it declined to revisit the issue. Essentially, the State has wrong-footed itself; it can hardly be considered error when a trial court does not rehash a previous conclusion in light of a new standard that would actually make it easier to reach the same result. Thus, I concur in the majority's result, although not for the same reasons that it articulates. In any event, if I am correct that the Duncan

---

[64] *Manuel v Gill*, 481 Mich 637, 642; 753 NW2d 48 (2008).

[65] Emphasis added.

[66] *Duncan I*, 284 Mich at 365- 371 (WHITBECK, J., dissenting).

[67] *Id.* at 371.

plaintiffs have not stated a claim on which relief can be granted, the issue need not be decided.

As for the State's second argument to the effect that we should somehow overrule the Supreme Court's decision in *Lansing Schools*, I fully concur in the reasoning and the result that the majority sets out. While I recognize that the State would like to have the ruling in *Lansing Schools* set aside, it is almost risible to suggest that this Court do so. Panels of this Court do not overrule decisions of the Supreme Court. To suggest otherwise is to disregard the judiciary's hierarchical system and the very concept of stare decisis. And, again, if I am correct that the Duncan plaintiffs have not stated a claim on which relief can be granted, the issue need not be decided.

### V. RES JUDICATA

#### A. THE SUPREME COURT'S ORDERS

The Supreme Court's orders do not address the subject of res judicata.

#### B. THE TRIAL COURT'S DECISION

As stated, in October 2011 the State filed a renewed motion for summary disposition in the trial court. The trial court denied this motion in December 2011. With respect to the State's assertion that res judicata controlled, the trial court ruled that res judicata did not bar the action.

#### C. THE STATE'S APPEAL

The State argues that the doctrine of res judicata prevents the problem of multiple suits litigating the same cause of action. "The doctrine bars a second,

subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."[68]

The State contends the Michigan Supreme Court takes a broad approach to the doctrine of res judicata, having held that it "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not."[69] The State concludes that all three prongs of the test for the application of res judicata have been met here.

### D. STANDARD OF REVIEW

As the majority states, we review de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law.[70] "The applicability of the doctrine of res judicata is a question of law that is also reviewed de novo."[71]

### E. THE MAJORITY'S DECISION

The majority holds that

> [t]he issues presented in this civil case regarding the state's alleged deprivation of plaintiffs' constitutional rights through a deficient indigent criminal defense system were not and could not have been raised in the plaintiffs'

---

[68] *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004); see also *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001).

[69] See *Adair*, 470 Mich at 121, citing *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999); see also *Sewell*, 463 Mich at 575.

[70] *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001).

[71] *Id.*

individual criminal prosecutions. See *Stoudemire*, 248 Mich App at 334. The remedy that plaintiffs seek via a class action, i.e., improvements to the indigent criminal defense system, could not 'have been achieved during plaintiffs' prior criminal proceedings. . . . Further, as plaintiffs' proposed class includes indigent people who may not have been convicted of crimes, there has been no final decision on the merits in those cases. See *id.*

Obviously, the majority is here relying on the third prong of the res judicata test: that the issues presented in the subsequent case "were or *could have been decided* in the prior case." (Emphasis added.) But it *is* possible that the issue of deficiencies in the indigent criminal defense system could have been raised and decided in the individual prosecutions of the individual Duncan plaintiffs.

After all, broad issues of lack of representation and lack of effective representation were raised and decided in both *Gideon* and *Strickland*. Not every request for major changes in the law need be decided on a class action basis through the exercise of declaratory and injunctive relief; in fact, most are not. And only if the class action route is the *exclusive* route by which to pursue those changes must the proposed class include persons not yet convicted of crimes, for whom there have been no decisions on the merits, as is the case here. Therefore, I dissent on this point, but I again note that if I am correct that the Duncan plaintiffs have failed to state a claim on which relief can be granted, then we need not reach this issue.

VI. CONCLUSION

The State's appeal in this case raises a number of important issues, some new and some the same or virtually the same as it raised in its initial appeal in this Court and before the Supreme Court. Sorting these

issues out is a considerable job in and of itself, and the majority has proceeded carefully and methodically, issue by issue, to do just that. For these reasons and as I have set out, I concur in the majority's holdings with respect to class certification, judicial estoppel (with respect to result), and standing (with respect to result under the State's first formulation of the issue and fully with respect to our overruling *Lansing Schools*).

But I profoundly disagree with the majority's conclusion that the "only proper question for this Court to address" is whether the State's argument on the failure of the Duncan plaintiffs to state a claim on which relief can be granted is "foreclosed under the law of the case doctrine." To the extent that there is a law of the case in this matter growing out of the Supreme Court's various orders—and I doubt that there really is—it is so confusing and contradictory as to defy application. Under those circumstance, as I have outlined, I would hold that the Duncan plaintiffs have, even when accepting each of the facts that they assert as true, failed to state a claim on which a court—any court—can grant relief.

And with respect to relief, an additional comment is in order. As I stated in my original dissent in *Duncan I*,[72] there is no question that it is the ultimate responsibility of the judiciary "to say what the law is."[73] But those seeking judicial intervention must first establish that "their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable."[74] And then, " 'a particularized showing of irreparable harm . . . is . . . an indispensable requirement to obtain a preliminary injunc-

---

[72] *Duncan I*, 284 Mich at 385 (WHITBECK, J., dissenting).

[73] *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803).

[74] *Raines v Byrd*, 521 US 811, 820; 117 S Ct 2312; 138 L Ed 2d 849 (1997).

tion.' "[75] "The mere apprehension of future injury or damage cannot be the basis for injunctive relief."[76]

Adding to these stringent requirements is the concept of judicial restraint: that certain modesty with which we should contemplate intervening in public policy matters that more properly belong before the legislative and executive branches. The Duncan plaintiffs seek sweeping declaratory and injunctive relief. But the Supreme Court has recognized that normally, when dealing with the legislative and executive branches, declaratory relief is sufficient. In *Straus v Governor*, the Court said:

> [D]eclaratory relief normally will suffice to induce the legislative and executive branches, the principal members of which have taken oaths of fealty to the constitution identical to that taken by the judiciary, Const 1963, art 11, § 1, to conform their actions to constitutional requirements or confine them within constitutional limits. Only when declaratory relief has failed should the courts even begin to consider additional forms of relief in these situations.[77]

It is with that sense of judicial restraint and modesty—a recognition of the limits of judicial power, the historical efficacy of case-by-case adjudication, and the proper regard for those branches whose primarily responsibility it is to make public policy—that I suggest we should consider the issues involved in this case. Under this approach, we should now end the Duncan plaintiffs' long crusade.

I would reverse and remand this case for the entry of summary disposition in favor of the State.

---

[75] *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 9; 753 NW2d 595 (2008), quoting *Mich Coalition of State Employee Unions v Civil Serv Comm*, 465 Mich 212, 225-226; 634 NW2d 692 (2001).

[76] *Pontiac Fire Fighters*, 482 Mich at 9.

[77] *Straus v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999) (quotation marks and citations omitted).