*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF BOBBIE JEAN WILSON-WHITE,
by JAMES E. WHITE, Personal Representative,

      Plaintiff-Appellant,

v

ST. JOHN MACOMB HOSPITAL,
DIAGNOSTIC RADIOLOGY CONSULTANTS,
PC, PHILIP A. ADLER, M.D., and AARON
SMITH, D.O.,

      Defendants,

and

TRI-COUNTY UROLOGISTS, PC, and
GREGORY V. MCINTOSH, D.O.,

      Defendants-Appellees.

UNPUBLISHED
July 30, 2019

No. 341093
Macomb Circuit Court
LC No. 2011-004467-NH

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff appeals as of right the trial court's November 2017 order granting summary disposition in favor of defendants Tri-County Urologists, P.C. ("Tri-County") and Gregory V. McIntosh, D.O. ("McIntosh") (collectively "defendants"), pursuant to MCR 2.116(C)(10).[1] On appeal, plaintiff also challenges the trial court's August

---

[1] The circuit court previously granted summary disposition in favor of defendants St. John Macomb Hospital, Philip A. Adler, M.D., and Diagnostic Radiology Consultants, P.C. Plaintiff does not challenge the dismissal of these defendants, who are not parties to this appeal.

2017 order in which the court, for the second time, disqualified plaintiff's proffered expert witness, Michael E. Lustgarten, M.D. We reverse and remand for further proceedings.

## I. BACKGROUND

This case is before this Court for the second time. The trial court previously granted summary disposition in favor of defendants in 2013, after ruling that Dr. Lustgarten lacked qualification to testify as an expert on the applicable standard of care. Respecting the previous appeal, this Court reversed that decision and remanded the case to the trial court. *Estate of Bobbie Jean Wilson-White v St John Macomb Hosp*, unpublished per curiam opinion of the Court of Appeals, issued February 19, 2015 (Docket No. 316751), lv den 499 Mich 854 (2016), rec den 499 Mich 931 (2016). The underlying facts are summarized in this Court's previous opinion as follows:

> On April 27, 2009, McIntosh and urology resident Aaron Smith, D.O. ("Smith") [who was dismissed from the action by stipulation and is not a party on appeal] performed a percutaneous nephrolithotripsy ("PCNL") on Bobbie Jean Wilson-White ("Wilson-White") to remove a kidney stone from her right kidney. Approximately four weeks prior to the surgery [on April 2, 2009], Wilson-White had undergone a preoperative blood analysis pursuant to McIntosh's instructions. The analysis indicated a higher-than-normal prothrombin time ("PT") of 16.4, a higher-than-normal activated partial thromboplastin time ("APTT") of 40.1, and a low platelet count of 100. According to plaintiff, these were "clear indicators that [Wilson-White] had a clotting deficiency." It does not appear that McIntosh considered the results of Wilson-White's blood tests before proceeding with the PCNL operation. Wilson-White began to hemorrhage during the surgery. The doctors were able to remove the kidney stone and Wilson-White was placed in a recovery area where she could be closely monitored. She then began to hemorrhage again, required numerous units of blood and blood products, and was taken back into the operating room twice during the course of the night, once to remove her right kidney. She died at 6:30 a.m. on the morning of April 29, 2009. Thereafter, plaintiff filed this medical-malpractice action alleging, among other things, that McIntosh had breached the standard of care by continuing with the PCNL despite the results of the preoperative blood analysis and without consulting a hematologist or obtaining clearance to operate.

> Plaintiff's affidavit of merit was executed by Michael E. Lustgarten, M.D. ("Lustgarten"). During his deposition, Lustgarten opined that McIntosh should have reviewed Wilson-White's laboratory results and obtained a hematologic consultation before conducting the PCNL. Lustgarten testified that, in light of Wilson-White's blood-test results, he would not have performed the surgery without first consulting a hematologist. He opined that Wilson-White "was at high risk for a problem based on the blood work that was obtained." He noted that the procedure was purely elective for Wilson-White, opined that a patient with a platelet count of 100 was "not . . . a candidate for a PCNL electively," and testified that "an intelligent urologist would not have gone forward with this case." Lustgarten opined that McIntosh had never reviewed Wilson-White's

preoperative laboratory results before conducting the surgery. If McIntosh had reviewed the laboratory results, and had still proceeded with the PCNL, this would not have conformed to "the standard of practice of most urologists" in Lustgarten's opinion. Under examination by defense counsel, Lustgarten admitted that he could not point to any textbook or other medical literature to support the proposition that a PCNL should not be performed on a patient with a PT of 16.4, an APTT of 40.1, and a platelet count of 100. In response to another of defense counsel's questions, Lustgarten stated, "I'm not sure what the standard of practices are." However, Lustgarten later confirmed that he was aware of the standard of care applicable to board-certified urologists performing PCNLs and opined that McIntosh had violated this standard.

After the deposition, defendants moved for summary disposition under MCR 2.116(C)(10), arguing that Lustgarten did not know the standard of care and, therefore, was not qualified under Michigan law to serve as an expert witness. The circuit court granted defendants' motion. [*Id.*, unpub op at 1-2].

On appeal, this Court held that the trial court "abused its discretion by striking Lustgarten as an expert witness." *Id.*, unpub at 6. This Court concluded that Dr. Lustgarten's "deposition testimony was reliable, supported by training and experience, and sufficient to assist the trier of fact" and that Dr. Lustgarten "was qualified to provide expert testimony on the standard of care in this case." *Id.* Accordingly, this Court reversed the trial court's order granting summary disposition and remanded the case to the trial court. *Id.*[2]

On remand, defendants continued to challenge the admissibility of Dr. Lustgarten's standard-of-care testimony. Defendants initially argued that our Supreme Court's decision in *Elher v Misra*, 499 Mich 11; 878 NW2d 790 (2016), which was issued after this Court's previous decision, constituted a change in the law that permitted the trial court to revisit the admissibility of Dr. Lustgarten's testimony.[3] The trial court disagreed. On reconsideration, however, the trial court agreed with defendants that *Craig v Oakwood Hosp*, 471 Mich 67; 684 NW2d 296 (2004), required it to hold an evidentiary hearing to reconsider the reliability of Dr. Lustgarten's proposed testimony.[4] At the evidentiary hearing defendants revisited the standard-of-care issue,

---

[2] From this Court's decision, defendants sought review by our Supreme Court. The Court denied their application for leave to appeal on February 2, 2016 and defendants' motion for reconsideration of that order on May 24, 2016. *White v St John Macomb Hosp*, 499 Mich 854 (2016), rec den 499 Mich 931 (2016).

[3] Defendants, in their motion for reconsideration before our Supreme Court, argued extensively that *Elher*, which was decided February 8, 2016, required a different result than that reached by this Court. Nonetheless, our Supreme Court denied their motion for reconsideration on May 24, 2016.

[4] Before defendants' motion for an evidentiary hearing, the trial court, in accordance with this Court's remand instructions, determined that testimony from Dr. Lustgarten and another

-3-

presented their proposed expert's testimony, and relied on articles that had not been presented before this Court's previous decision. Dr. Lustgarten testified regarding his opinions that the decedent's coagulopathic condition revealed by her blood tests before the surgery required consideration of the constellation of individual abnormal test results before proceeding with the surgery and that McIntosh breached the standard of care applicable to urologists by proceeding with the surgery under the circumstances. The trial court ruled that Dr. Lustgarten lacked qualification to testify. Thereafter, the trial court granted defendants' renewed motion for summary disposition under MCR 2.116(C)(10), finding that, without Dr. Lustgarten's testimony, plaintiff could not present the requisite standard-of-care testimony to support his malpractice claim.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 712; 737 NW2d 179 (2007). A motion brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is reviewed "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008), reh den 481 Mich 882 (2008). When opposing a properly asserted and supported motion for summary disposition under MCR 2.116(C)(10), the nonmoving party cannot rely on mere allegations or denials in his or her pleadings to establish a question of fact. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Rather, the nonmoving party must present at least some evidentiary proof, some statement of specific fact upon which to base his case. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999), reh den 461 Mich 1205 (1999); *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We review for an abuse of discretion a trial court's ruling regarding the qualifications of an expert witness to testify. *Gonzalez v St John Hosp & Med Ctr*, 275 Mich App 290, 294; 739 NW2d 392 (2007). A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled and reasonable outcomes. *Id*. We also review de novo whether and to what extent the law of the case doctrine applies. See *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008).

## III. ANALYSIS

On appeal, plaintiff raises a number of claims of error, chief among them that the law of the case doctrine precluded the trial court from revisiting this Court's previous determination that

---

physician, Dr. Daniel Spitz, M.D., could be used to support plaintiff's theories of proximate cause. No party has appealed that ruling.

Dr. Lustgarten qualified to provide expert testimony on the standard of care in this case. We agree.

Plaintiff, as the proponant of expert testimony, had the burden of establishing its admissibility, including the requirement of reliability. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010); *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 789; 685 NW2d 391 (2004). As explained in this Court's previous decision, the admissibility of Dr. Lustgarten's testimony required examination of MRE 702, MCL 600.2955, and MCL 600.2169:

> The admissibility of expert testimony on the applicable standard of care in medical-malpractice actions is governed by several different provisions. MRE 702 generally provides for the testimony of experts:
>
>> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
>
> MCL 600.2955, which is largely derived from the United States Supreme Court's decision in *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 593-594; 113 S Ct 2786; 125 L Ed 2d 469 (1993), provides in pertinent part:
>
>> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
>>
>> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>>
>> (b) Whether the opinion and its basis have been subjected to peer review publication.
>>
>> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

\* \* \*

(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169.

In turn, MCL 600.2169 provides in relevant part:

(2) In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:

(a) The educational and professional training of the expert witness.

(b) The area of specialization of the expert witness.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

(3) This section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section. [*Wilson-White*, unpub op at 3-4.]

At the outset, we note that although defendants' arguments on appeal are couched in terms of Dr. Lustgarten's inability to testify concerning causation, their motion for an evidentiary hearing sought specifically to redetermine whether he should be able to testify about the relevant standard of care on the basis of an alleged change in the law, namely, our Supreme Court's

-6-

decision in *Elher*, and the presentation of "new" evidence. Moreover, after this Court's decision, the trial court entertained a separate motion for summary disposition concerning causation and, after reconsideration of its earlier order it found that, through the testimony of Dr. Lustgarten and Dr. Spitz, plaintiff had established a question of fact concerning causation as it related to the decision to operate. Defendants have not appealed that decision.

The trial court's August 2, 2017 decision did not discuss Dr. Lustgarten's qualification to testify about proximate cause, but only again determined the issue whether he could testify about the standard of care. Thus, the instant appeal, like this Court's earlier decision, again pertains to the question whether the trial court erred by deciding that Dr. Lustgarten lacked the qualifications to testify about the standard of care. We agree with plaintiff that the law of the case doctrine prohibited the trial court from revisiting the admissibility of Dr. Lustgarten's standard-of-care testimony.

In *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 110-111; 888 NW2d 295 (2016) (quotation marks and citations omitted), this Court explained:

> The law of the case doctrine provides that a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue, but only if the facts remain materially the same. The doctrine's purpose is the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing.

A trial court on remand possesses the authority to take any action that is consistent with the opinion of the appellate court. *VanderWall v Midkiff*, 186 Mich App 191, 196; 463 NW2d 219 (1990). The purpose of the law of the case doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001) (citation omitted). Once an appellate court has resolved a legal question and remanded the case for further proceedings, the legal question will not be determined differently in subsequent proceedings in the same case where the facts remain materially the same. *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000). "[A]s a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id.* at 260 (citation omitted).

The law of the case doctrine is not a limit on this Court's power and this Court may under some circumstances disregard it. See *Locricchio v The Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1991). However, this Court has repeatedly held that it is obligated to apply the law of the case doctrine when there has been no material change in the facts or an intervening change in the law. *Duncan v State*, 300 Mich App 176, 188-189; 832 NW2d 761 (2013); *Foreman v Foreman*, 266 Mich App 132, 138; 701 NW2d 167 (2005); *Reeves v Cincinnati, Inc (After Remand)*, 208 Mich App 556, 560; 528 NW2d 787 (1995). "Even if the prior decision was erroneous, that alone is insufficient to avoid application of the law of the case doctrine." *Duncan*, 300 Mich App at 189 (citation omitted).

Initially, contrary to some of defendants' arguments below, this Court's previous decision specifically resolved not only the question of Dr. Lustgarten's qualification as an expert witness,

but also found that the basis for his testimony "was reliable, supported by training and experience, and sufficient to assist the trier of fact." *Wilson-White*, unpub op at 6. This Court specifically held that Dr. Lustgarten "was qualified to provide expert testimony on the standard of care in this case" under MRE 702, MCL 600.2955, and MCL 600.2169. *Id*. The trial court should have found, as it did initially, that it was bound by this Court's decision.

The essential facts of this case have not changed materially since this Court issued its decision. Nothing new has been presented about the decedent's condition, treatment, or cause of death. Plaintiff's theory of medical malpractice liability and breach of the standard of care also remain the same, although we note that Dr. Lustgarten testified at the evidentiary hearing that other factors in the decedent's chart would also support his opinion.

Among their other arguments below, defendants maintained that the law of the case doctrine did not apply because, after this Court issued its decision, the Michigan Supreme Court decided *Elher*. However, *Elher* does not serve as an "intervening change in the law" permitting the trial court to avoid application of the law of the case doctrine in this case.

In *Elher*, which also involved a medical malpractice claim, the plaintiff offered a standard of care expert and the defendants moved for summary disposition on the ground that the expert failed to meet the requirements of MRE 702 and MCL 600.2955. *Elher*, 499 Mich at 17. The trial court granted the motion, but this Court reversed. *Id*. at 18. The Supreme Court reversed this Court's decision. It explained that this Court "rejected as irrelevant the three guideposts relied on by the circuit court—the absence of scientific testing and replication, the lack of evidence that [the expert's] opinion and its basis were subjected to peer-reviewed publication, and plaintiff's failure to demonstrate the degree to which [the expert's] opinion and its basis were generally accepted in the relevant expert community." *Id*. at 18-19. In analyzing the issue, our Supreme Court first considered the *Daubert* standard, and noted that, to determine the reliability of a proposed expert's testimony, "[a] lack of supporting literature, while not dispositive, is an important factor in determining the admissibility of expert witness testimony" and that " '[u]nder MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible.' " *Id*. at 22, quoting *Edry*, 486 Mich at 642. The Court found that the plaintiff's expert qualified to testify as an expert because of his extensive qualifications. *Elher*, 499 Mich at 24. The Court also acknowledged that the *Daubert* factors "may or may not be relevant in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of the expert's testimony," and that the United States Supreme Court "has stated that, in some cases, 'the relevant reliability concerns may focus upon personal knowledge or experience[.]' " *Id*. at 24-25, quoting *Kumho Tire Co v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999).

Our Supreme Court, however, then noted that the United States Supreme Court had held that, even in those cases, reference to the *Daubert* factors could be helpful. *Elher*, 499 Mich at 25. The Court held that the trial court did not abuse its discretion when it relied on two *Daubert* factors to find that the expert witness's testimony would not be reliable. Our Supreme Court noted that this Court had erred when it determined that the peer-review articles supporting the defendants' position were not in fact peer-reviewed, and thus found that this Court erred when it determined that the trial court could not have relied on the articles in making its determination.

-8-

*Id*. In contrast, the Court noted that the expert had admitted that he knew of no one who shared his opinion and thus the trial court did not abuse its discretion by relying on the lack of evidence regarding the degree to which the expert's opinion was generally accepted. *Id*. at 26. Although our Supreme Court agreed with this Court that the trial court erred by relying on the lack of scientific testing and replication because the factor lacked relevance, it ultimately agreed with the trial court that the expert's opinion was not "based on reliable principles or methods" under MRE 702. Specifically, our Supreme Court held:

> Plaintiff merely pointed to [the expert's] background and experience in regard to the remaining factors, which is generally not sufficient to argue that an expert's opinion is reliable. [The expert] admitted that his opinion was based on his own beliefs, there was no medical literature supporting his opinion, and plaintiff failed to provide any other support for [the expert's] opinion.
>
> The circuit court also did not abuse its discretion by concluding that [the expert's] testimony was deficient because it did not conform to MRE 702. We find this Court's decision in *Edry v Adelman* to be instructive. In *Edry*, this Court concluded that an expert failed to meet the requirements of MRE 702 because his opinion "was not based on reliable principles or methods"; his opinion was contradicted by the opinion of the defendant's expert and published literature on the subject that was admitted into evidence, which even he acknowledged as authoritative; and there was no literature supporting the testimony of plaintiff's expert admitted into evidence. As in *Edry*, [the expert's] opinion "was not based on reliable principles or methods," his opinion was contradicted by the opinion of defendant's expert and published literature on the subject that was admitted into evidence, and there was no literature supporting the testimony of plaintiff's expert admitted into evidence. Plaintiff failed to provide any support for [the expert's] opinion that would demonstrate that it had some basis in fact and that it was the result of reliable principles or methods. While peer-reviewed, published literature is not always necessary or sufficient to meet the requirements of MRE 702, the lack of supporting literature, combined with the lack of any other form of support, rendered [the expert's] opinion unreliable and inadmissible under MRE 702. [*Elher*, 499 Mich at 27-28 (footnotes omitted).]

Close analysis of the *Elher* decision establishes that it did not create new law. Our Supreme Court relied entirely on existing law, such as *Daubert* and, more particularly *Edry*, the case cited by this Court in its previous decision in this case for analysis whether Dr. Lustgarten's testimony was reliable. In *Elher*, our Supreme Court did not explicitly or implicitly overrule any precedent. Rather, it applied existing precedent to the facts presented. Even if defendants can show that this case is factually similar to *Edry* or *Elher* and that this Court may have erroneously analyzed Dr. Lustgarten's proposed standard of care testimony to determine its reliability and admissibility, the trial court remained bound by this Court's decision. The law of the case doctrine precluded it from revisiting the admissibility of Dr. Lustgarten's expert testimony. *Duncan*, 300 Mich App at 189.

Therefore, the trial court erred by revisiting the issue of the admissibility of Dr. Lustgarten's testimony, abused its discretion by thereafter declaring Dr. Lustgarten's expert

testimony regarding the applicable standard of care inadmissible, and erred by granting defendants' motion for summary disposition on that basis. Accordingly, we reverse the trial court's orders and remand for further proceedings. Given our holding, it is unnecessary for us to consider plaintiff's other claims of error.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford