*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TONY DAVID KINGSLEY,

       Defendant-Appellant.

UNPUBLISHED
April 27, 2023

No. 361756
Wayne Circuit Court
LC No. 18-007675-01-FC

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

PER CURIAM.

In 2019, defendant, Tony Kingsley, was convicted of carjacking, MCL 750.529a, armed robbery, MCL 750.529, kidnapping, MCL 750.349, torture, MCL 750.85, two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), and eight counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court went above the recommended minimum sentencing guidelines when it sentenced him to 30 to 60 years' imprisonment on his convictions for carjacking, kidnapping, armed robbery, torture, and CSC-I, with the sentences for the carjacking and two of the CSC-I convictions to be served consecutively to each other. Kingsley appealed to this Court, which affirmed his convictions and determined that the trial court did not abuse its discretion in imposing an outside-the-guidelines sentence. *People v Kingsley*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2021 (Docket No. 349798), pp 1, 8. However, because the court did not articulate its rationale for imposing consecutive sentences, this Court remanded for either articulation of the reasoning for each consecutive sentence or "for resentencing if the court determines on remand that one or more of the consecutive sentences is not warranted." *Id*. at 9.

On remand, the trial court declined to impose consecutive sentences, so it resentenced Kingsley to 30 to 60 years' imprisonment for his convictions for carjacking, armed robbery, kidnapping, torture, and both counts of CSC-1.[1]  Before imposing the sentence, the court considered an updated presentence investigative report (PSIR) and updated sentencing memorandums.  Thereafter, in support of its decision, the trial court adopted its prior reasoning to justify the imposition of the same out-of-the-guidelines sentences.  Kingsley now appeals his resentencing as of right, arguing that the law-of-the-case doctrine does not preclude this Court from determining that part of the court's rationale for imposing an out-of-the-guidelines sentence violated his due-process rights.  For the reasons stated in this opinion, we affirm.

## I.  BASIC FACTS

The relevant facts were summarized in this Court's prior opinion in this case:

> These cases arise from the carjacking, kidnapping, torture, and sexual assault of the victim by Kingsley and his subsequent flight from the police.  One evening in August 2018, the victim attended an art event with friends in Detroit, but she drove separately from them.  After the event, the victim and her friends planned to gather at a bar located in Hamtramck.  At about 10:40 p.m., the victim drove alone to the bar and parked her vehicle.  She opened her driver's side door and reached over to her passenger seat to retrieve her bag.  When the victim turned, she found that Kingsley stood between her and the open car door, preventing her from exiting the vehicle.  Kingsley pointed a firearm at the victim and said, "Give me your wallet and your keys."  When the victim "froze" and did not immediately respond, Kingsley directed her to slide over to the passenger seat.  Kingsley demanded the victim's car keys, which she gave to him.  Kingsley started the vehicle and drove out of the parking lot.
>
> As Kingsley drove away, the victim told Kingsley that he could take her wallet and camera out of her bag.  In response to the victim's requests to be released, Kingsley said, "I'll let you go as soon as I get to where I'm going."  Kingsley drove on the freeway at a high rate of speed and instructed the victim to put her head down while he was driving.  Eventually, Kingsley turned off the roadway, drove across a field in a park, and parked the victim's vehicle next to a dark wooded area.  Throughout this process, Kingsley kept his firearm aimed at the victim's abdomen.
>
> Kingsley told the victim to get out of the car.  He then grabbed the victim by her hair, pulled her into the woods, and told her to undress.  Once the victim removed her clothing, Kingsley told her to put her arms around a nearby tree.  Kingsley tied the victim's wrists together with a rope, tore the victim's skirt, and

---

[1] Kingsley was also convicted of—and resentenced for—two counts of third-degree criminal sexual conduct (CSC-3), MCL 750.520d(1)(b), and eight counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, but he does not challenge those convictions or sentences in this appeal.

then tied the strips of fabric around the victim's wrists. In an attempt to humanize herself and make it less likely she was hurt, the victim told Kingsley about her family and her desire to live. The victim testified, "I was afraid I wasn't going to leave the woods."

However, Kingsley ignored the victim's attempt to elicit empathy. Kingsley went back to the vehicle and, upon his return, the victim attempted to negotiate a sexual act in exchange for her freedom because she thought it would "be a better alternative than whatever else" could happen. Kingsley picked up the victim's dress from the ground and tied it around her neck and mouth. The victim felt helpless because she no longer could try to talk herself out of the situation. Kingsley left the woods once again, and, upon returning, untied the victim's gag and the rope from around her wrists. The victim was allowed to put her dress back on, and Kingsley unbuckled his pants. In response, the victim asked, "How do I know if I do this [perform oral sex] that you'll let me go?" Kingsley stated, "I promise."

Kingsley "pushed [the victim's] head into him" and later removed his penis from her mouth and ejaculated into the woods. Kingsley told the victim to put her hands on a nearby tree, and then he digitally penetrated her vagina. Kingsley then attempted to insert his penis into the victim's vagina. Although Kingsley was unsuccessful, the victim still felt Kingsley press his penis against her inner labia. Kingsley asked the victim if she was going to report him. The victim promised Kingsley she would not report him and indicated that she "just want[ed] [her] life." Before leaving the victim in the woods, Kingsley told the victim he had her identification and that he knew where she lived, stating, "Don't make me regret this." When the victim could no longer see the headlights of her vehicle, she left the woods and proceeded to a gas station where she telephoned her friends. The victim's friends had to persuade her to call the police because she was so scared of Kingsley.

After calling the police and her friends, the victim was taken to the hospital where DNA evidence was collected. The victim's vehicle was found burned and abandoned. Security footage from local businesses near the time of the victim's kidnapping captured images of Kingsley, and the police learned Kingsley's identity from community sources. The police discovered that Kingsley stayed with a local friend and interviewed the friend's mother. When packing Kingsley's belongings, the friend's mother found the victim's driver's license and returned it to the police.

The police were actively looking for the Kingsley when he was seen walking down a Hamtramck street late one evening. Kingsley disregarded the officers' commands and fled the area. When his escape was thwarted by a locked fenced area, Kingsley tossed an object and resisted apprehension. Ultimately, the police had to use a taser to secure Kingsley and arrest him. A gun was recovered from the area where Kingsley had tossed the object.

Within three days of the assaults, the victim was shown an array of photographs and identified Kingsley as her assailant. Additionally, the DNA test results corroborated the victim's identification of Kingsley. The police investigation also revealed that Kingsley was the perpetrator of a strikingly similar sexual assault that had occurred three weeks earlier in July 2018. MV, who was the victim of that assault, testified that she was with her boyfriend in a car when Kingsley opened the door, displayed a gun, beat her boyfriend, and forced him to leave. Kingsley took MV into the woods, forced her to undress, tied her to a tree, and sexually assaulted her. Kingsley advised MV that after the sexual act, he would let her go. [*Kingsley*, unpub op at 2-3.]

## II. LAW-OF-THE-CASE DOCTRINE

### A. STANDARD OF REVIEW

Kingsley argues that the law-of-the-case doctrine does not preclude this Court from finding that the trial court's rationale for imposing a 30-to-60-year outside-the-guidelines sentence was improper notwithstanding this Court's finding in his earlier appeal that the 30-to-60-year sentence was not an abuse of discretion. Specifically, he asserts that the trial court's decision to consider his conduct toward MV, whom he had been accused to raping three weeks prior to the rape in this case, was improper because—at the time he was originally sentenced—he had pending criminal charges related to that conduct. He asserts that he was presumed innocent of the charged crimes related to his conduct toward MV, so the court's consideration of that conduct violated his due-process rights. "Whether the law of the case doctrine applies is a question of law that we review de novo." *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013).

### B. ANALYSIS

"The law-of-the-case doctrine is intended to promote efficiency, comity, and finality in the law." *People v Hawkins*, ___ Mich App ___ , ___ ; ___ NW2d ___ (2022) (Docket No. 357068); slip op at 17. "Generally, the doctrine provides that an appellate court's final determination on a matter of law binds both the lower court on remand and the appellate courts in later appeals of the same case." *Id*. "Law of the case applies, however, only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Adm'r v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000).

At the time of sentencing, Kingsley had charges pending for crimes related to his sexual assault of MV. The charges remained pending at the time that he filed his first claim of appeal. He did not raise a challenge to the court's consideration of his conduct toward MV. Instead, approximately four months after he was sentenced for his convictions in this case, he pleaded guilty to several crimes arising from his conduct toward MV. Thereafter, in 2021, this Court determined that the trial court did not abuse its discretion. The Court reasoned:

Kingsley's total offense variable ("OV") score was 195 and his total prior record variable score was 27. This placed Kingsley in the D-VI cell of the Class A sentencing grid, which recommends a minimum sentence of 171 to 285 months' imprisonment. MCL 777.62. However, the trial court went above the

recommended minimum sentence range when it sentenced Kingsley to 30 to 60 years' imprisonment on his carjacking, kidnapping, armed robbery, torture, and CSC-I convictions. In support of the upward departures, the trial court stated that it "pored over" the presentence investigation report ("PSIR"), the sentencing guidelines, and the prosecutor's sentencing memorandum, and recalled the facts and testimony at trial. The trial court considered not only Kingsley's actions against the victim in this case, but also his actions against MV, who was similarly sexually assaulted by Kingsley in a wooded area just three weeks before the assault of this victim. The trial court thought that it was "apparent" that Kingsley was on his "way to becoming a serial rapist." Furthermore, the trial court considered that what the victim went through was "every woman's nightmare" and that Kingsley's lack of remorse and acknowledgment, despite the evidence at trial, was concerning.

Additionally, the trial court noted that although Kingsley's OVs for his carjacking, armed robbery, kidnapping, and torture convictions "level[ed] out at 195 points," they were "capped at 100 points." And regarding Kingsley's CSC convictions, the trial court noted that although his total OV score was reduced by 50 points "because OV 11 can't be scored," his total OV score for those convictions was "still well above the 100 points." Moreover, the trial court stated it could not contemplate sentencing Kingsley at the bottom of the sentencing guidelines range and, instead, found that there were "compelling and substantial reasons to go above guidelines," which, the trial court pointed out, "are only advisory." The trial court noted that even if it "went one grid further down, where the top of the guidelines would be 375 months, which is 31 years and 3 months, because those OVs are so much higher than what they get capped off at," it believed that sentencing Kingsley to 30 to 60 years' imprisonment on the carjacking conviction was "a proportionate sentence." After noting the carjacking sentence would be preceding and consecutive to the sentence for Kingsley's first CSC-I conviction, the trial court sentenced Kingsley to 30 to 60 years' imprisonment for the first CSC-I conviction, 30 to 60 years' imprisonment for the other CSC-I conviction, and 30 to 60 years' imprisonment for the armed robbery, kidnapping, and torture convictions.

On appeal, Kingsley asserts that the trial court's reliance on the seriousness of the offenses in justifying the upward departure was inappropriate because the seriousness of the offenses was fully contemplated by the sentencing guidelines. Kingsley submits that the OVs were scored to address the seriousness of the offense, including OV 4, which considers serious psychological injury, OV 7, which considers aggravated physical abuse, and OV 10, which considers exploitation of a vulnerable victim. Moreover, Kingsley noted that OVs 1 and 2 were assessed points for the use of a weapon, and OV 8 was assessed points for asportation or captivity.

Kingsley declined to speak at sentencing, and defense counsel argued that Kingsley had the potential to be a better person upon his release from prison and that consecutive sentencing would not be proportionate. Nonetheless, the trial court found the 30- to 60-year sentences to be proportionate to the offense and offender. In doing so, the trial court explained that the guidelines did not adequately reflect

the seriousness of Kingsley's crimes and behavior, emphasizing his commission of a similar crime weeks earlier, the contents of the PSIR, the sentencing memorandum, and the testimony at trial.

It has long been recognized that a "trial court is not required to use any formulaic or 'magic' words" to justify a departure in sentencing. *People v Babcock*, 469 Mich 247, 259 n 13; 666 NW2d 231 (2003). We conclude that the trial court explained the reasons for imposing the upward departure sentence and why the sentence imposed was more proportionate to the offense and offender than a different sentence would have been. See *[People v] Odom*, 327 Mich App [297] 315[; 933 NW2d 719 (2019)]. As a result, the trial court adequately explained its decision to impose an upward departure sentence. Additionally, the trial court's statements adequately explained its reasoning for the extent of the departure sentence imposed. See *[People v] Milbourn*, 435 Mich [630], 659[; 461 NW2d 1 (1990)] (explaining that the extent of a departure sentence can violate the principle of proportionality). Therefore, the trial court did not abuse its discretion in imposing an upward departure sentence. [*Kingsley*, unpub op at 7-8.]

Although the prior opinion did not explicitly state that it was proper for the trial court to consider Kingsley's conduct toward MV despite the fact that charges were pending, it implicitly concluded that it was proper to do so. See *Lopatin*, 462 Mich at 260 (concluding that the law-of-the-case doctrine applies to issues decided implicitly in the prior appeal). The law-of-the-case-doctrine, therefore, applies and precludes this Court from reaching a different determination on the propriety of the court's decision to impose an outside-the-guidelines sentence.

Moreover, assuming *arguendo* that the law-of-the-case doctrine does not apply, Kingsley is not entitled to relief. He argues on appeal that "the sentencing judge's error was in the use, for purposes of justifying an upward departure of his sentence, of alleged criminal acts that he was under prosecution for in another case and still presumed innocent of and that such error violated his federal and state constitutional right to due process of law." He does not direct this Court to any legal authority in support of his position, however. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Accordingly, even if it were proper to reach the merits of this claim, we would conclude that it was abandoned by Kingsley's failure to support it.

Finally, it is worth noting that Kingsley does not even have a factual basis for his claim that the trial court violated his due-process rights by considering his behavior toward MV. When Kingsley was originally sentenced in June 2019, he had pending charges against him related to his sexual assault of MV. However, he pleaded guilty to those charges in November 2019. As a result, at the time that he was resentenced in April 2022, he did not have any pending charges related to his sexual assault of MV. Thus, when the court considered his conduct toward MV during resentencing, the court considered only conduct related to MV that he had admitted to committing. As a result, regardless of whether consideration of conduct that is subject to pending charges violates due process, no violation of Kingsley's due-process rights could have occurred because no conduct subject to pending charges was considered at resentencing.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney